GEORGE BACON *vs.* SAMUEL P. WESTERVELT AND ANOTHER.

The plaintiff was owner and master of a vessel and was employed by the defendants to carry a cargo of stone to New York to be delivered there to *M*, the freight being $115. The stone had been sold by the defendants to *M* on credit, but the amount of the freight was to be paid by him in cash. It was customary, as a matter of convenience to consignors, for masters of vessels in that trade to collect the freight of the consignee on orders given by the consignor. There was no order given here and no agreement that the plaintiff should collect the freight, but he expected that *M* would pay it to him on delivery of the stone. After the plaintiff had delivered the cargo *M* informed him that he was not able to pay the freight in cash, but would give him a check of one *U*, on a bank in New York, which he held, payable to his order, for $125, and which was post-dated about ten days. The plaintiff objected to taking it, but on being assured by *M* that *U* was a man of large property and that he would have no trouble in getting the money, he took it, with the indorsement of *M*, and paid him the difference in cash. He did not however take it in payment. The plaintiff brought the check back with him, and got it discounted at a bank, taking the proceeds. When it became due it was presented at the bank on which it was drawn, but *U* had no funds there, and had not had for a long time, and the plaintiff was compelled to take it up. No notice of the non-payment was given to either *U* or *M*. The check was afterwards delivered by the plaintiff to another party. *M* was insolvent at the time of the transaction and soon after went into insolvency. The plaintiff did not notify the defendants that he had taken the check, or of its non-payment, until after the failure of *M*, and the defendants, supposing the freight to have been paid by *M*, gave him credit for the amount on their books. All that the plaintiff did was done for the accommodation of the defendants, and was aside from the contract. Held, in a suit brought by the plaintiff against the defendants for the freight, that he was not estopped upon these facts from claiming the freight of the defendants, and was entitled to recover.

The plaintiff, in taking the check at the solicitation of *M*, to collect and apply the

proceeds on the freight, assumed no other duty or responsibility whatever. His act was a mere friendly act for the benefit of the defendants, not authorized by them and therefore not binding upon them and in no way prejudicial to them.

And as they were not informed of the fact, and their conduct was therefore in no manner affected by it, there was no room for the application of the principle of estoppel.

Their giving credit to *M* for the amount of the freight was a matter of no importance to the case. The entry was not binding upon them, and it was made upon the assumption that the freight was paid, when they had not informed themselves on the subject, and when the plaintiff was under no obligation to collect the freight or to inform them if it was not paid.

And as the act of the plaintiff in taking the check had not been adopted by the defendants and was not binding upon them, it was of no importance to the case that no notice of the non-payment of the check was given to the maker or indorser, or that the check was retained by the plaintiff, or that it was outstanding in the hands of other parties.

ASSUMPSIT, to recover freight for a cargo of stone carried from the town of Cromwell to the city of New York. The defendants pleaded the general issue, with notice of the special matters below stated, and the case was tried to the court, and the following facts specially found.

The plaintiff was the captain and part owner of a vessel which he was running on shares, he receiving one half of the profits and the other owners the other half. The defendants were the joint owners of a quarry in the town of Cromwell in this state. On the 7th of September, 1857, the defendants employed the plaintiff to transport a cargo of stone from Cromwell and deliver it to the firm of Miller and Hickie, in the city of New York, for the sum of $115. The cargo had been sold by the defendants to Miller & Hickie, to be delivered to them in the city of New York, and was sold on credit, with the exception of the freight, which Miller & Hickie were to pay to the defendants in cash, and the latter agreed to give them credit for the same as so much money paid on account. As a matter of convenience to consignors, it was usual for the captains of vessels to collect their freight of the consignees, on orders given them by the consignors, and although there was no agreement between the plaintiff and the defendants that the plaintiff should collect his freight of Miller & Hickie for the defendants, still the plaintiff expected that Miller & Hickie would pay him on account of the defendants, and would pay

him in cash. The plaintiff had no instructions from the defendants except to transport and deliver the cargo, but knew what the contract was between them and Miller & Hickie regarding the sale of the cargo. The plaintiff transported and delivered the cargo according to his contract. While it was being discharged Miller & Hickie gave him to understand that they intended to pay the freight in cash, but after it was all delivered informed him that they were not able to pay in cash, and offered him a check, drawn by one Underhill, on the Market Bank in the city of New York, for $125, and made payable to their order. The plaintiff objected to taking the check, stating that he did not know Underhill, and that it was not what he expected, but on representations being made by Miller & Hickie that Underhill was a man of large property, and that he would have no trouble with the check, and being unable to get payment in cash, he took the check and paid them the difference in cash between the amount of the check and the freight. The check was indorsed by Miller & Hickie and was post-dated some ten days. The plaintiff did not take the check in payment. Underhill had no funds in the Market Bank to pay the check, either at the time it was given to the plaintiff or at the time it became due. The plaintiff procured the check to be discounted at the Middlesex County Bank for his benefit, and it was duly presented by that bank to the Market Bank for payment, but was not paid and never has been, and the plaintiff was compelled to take it up. Miller & Hickie were insolvent at the time the check was given to the plaintiff, and about the time it became due Hickie sold out his interest in the concern to one Parrot, and not long thereafter the firm of Miller & Parrot went into insolvency, making the defendants their assignees and preferred creditors. The plaintiff did not notify Miller & Hickie of the non-payment of the check, nor did he inform the defendants of the transaction with Miller & Hickie until after the failure of Miller & Parrot, and the defendants, acting under the supposition that the freight had been paid, gave Miller & Hickie credit for the amount. The plaintiff kept the check in his hands, and before suit brought gave it to some of the other owners of the vessel,

who still have it. The plaintiff has never been paid, unless the transactions herein stated amount thereto. The court found that the contract between the plaintiff and the defendants was that the plaintiff should transport and deliver the cargo to Miller & Hickie, in the city of New York, for the sum of $115, and that he performed the same; and that what was done by him in endeavoring to collect the freight of Miller & Hickie, was done for the accommodation of the defendants, and was outside of the contract.

The court made this statement of facts a part of the record, and on the facts rendered judgment for the plaintiff. The defendants filed a motion in error and brought the record before this court for revision.

*Warner*, for the plaintiffs in error.

1. The law is well settled, that an outstanding obligation in the hands of a third party is a bar to any suit upon the claim on account of which it was given. In *Kearslake* v. *Morgan*, 5 T. R. 513, such a plea was held good on demurrer. *Holmes* v. *De Camp*, 1 Johns., 34. *Burdick* v. *Green*, 15 id., 247. *Davidson* v. *Bridgeport*, 8 Conn., 473.

2. If a creditor refer a third person to his debtor for payment, intending him to take payment in cash, and the latter instead of taking payment in money takes it in any other way, he takes it at his peril. *Smith* v. *Ferrand*, 7 Barn. & Cress., 24. *Taylor* v. *Briggs*, 2 Car. & P., 525. *Vernon* v. *Boverie*, 2 Shower, 296. Equally conclusive against the plaintiff's right of recovery is his indulgence to Miller & Hickie without the consent of the defendants. 2 Saund., Pl. & Ev., 637.

3. The fact that the plaintiff did not receive the check in payment for his freight, can not prevent its operating as payment, under the circumstances of the case. In accepting the check with Miller & Hickie's endorsement, he accepted the burthen of making it available by notifying Miller & Hickie if it should not be paid. The contract of indorsement was to pay in default of Underhill, on notice. The plaintiff's laches in this respect has discharged Miller & Hickie, both from liability on the check and from the claim of the defendants for

freight. *Bridges* v. *Berry*, 3 Taunt., 130. 1 Pars. on Cont., 224. *Sanford* v. *Dillaway*, 10 Mass., 52. *Farnum* v. *Fowle*, 12 id., 89. *Buck* v. *Cotton*, 2 Conn., 126.

4. The plaintiff is estopped from claiming that he took the check on the account of the defendants and not in payment. 1st. He had no authority to take it on their account. An agent has no authority to give credit when he knows his principal has contracted for cash. 2d. He had no right to discharge the defendants' lien upon the cargo for freight, unless he assumed the liability. At least, if he assumed to act at all in the collection of the freight, knowing the contract, and when informed by Miller & Hickie that they could not perform it, his duty was to have informed the defendants immediately, in order that they might take prompt measures to enforce the collection of their claim for freight. 3d. The taking of the check and paying the difference from his own funds was in law a transaction to which the plaintiff could not make the defendants parties, and was an actual conversion of the debt and check to his own use. 4th. His procuring the check discounted in his own name, his neglect to inform the defendants of the transaction, his retention of the check under such circumstances as induced the defendants to believe that the freight had been paid, and to credit the same in their account with Miller & Hickie as paid, his neglect to tender the check to the defendants, either before or at the time of the suit, and his transferring it into the hands of third parties, beyond his control and that of the defendants, are acts inconsistent with the existence of an agency in the transaction, and conclusive against the plaintiff's equity in insisting upon the claim. *Floyd* v. *Day*, 3 Mass., 403. *Myers* v. *Entriken*, 6 Watts & Serg., 44. *Brown* v. *Arrott*, id., 402. *Harvey* v. *Turner*, 4 Rawle, 223. *Tapley* v. *Martens*, 8 T. R., 451. If from the default of the plaintiff the freight has been lost to the defendants he can not recover. *Dodge* v. *Tileston*, 12 Pick., 328. *Parker* v. *Brancker*, 22 id., 45. *White* v. *Chapman*, 1 Stark, 113.

*Barnes* and *Culver*, for the defendant in error.

1. The plaintiff agreed with the defendants to transport a cargo of stone to New York and deliver it to Miller & Hickie, for the sum of $115. This was the only contract. The plaintiff was bound to deliver the goods. He could not retain them against Miller & Hickie for non-payment of freight. He did not agree to collect the freight, but was willing to receive it for the accommodation of the defendants. It is expressly found by the court that what he did in attempting to collect the freight was aside from the contract.

2. Has the plaintiff done any thing to impair his right to claim freight of the defendants ? They had sold the goods on credit to Miller & Hickie, who agreed to pay the freight to them in cash. Instead of paying cash, they induced the plaintiff, by false representations, to take the post-dated check of Underhill for $125, and defrauded him of ten dollars, which he paid for the difference between the amount of the check and the freight. It is found by the court that the plaintiff did not take this check in payment. It was never of any value ; but whether of value or not, it could not be presumed to be received in payment, but might be treated as a nullity. 2 Parsons on Cont., 135. *Bill* v. *Porter*, 9 Conn., 23.

3. But it is said by the defendants that the judgment of the court should have been in their favor on the peculiar state of the facts. They insist that the receipt of the worthless check of Underhill with the indorsement of Miller & Hickie, and the payment of the difference by the plaintiff upon the false representations of Miller & Hickie, with the neglect of the plaintiff to notify Underhill and Miller & Hickie of the non-payment of the check, tends to prove that the check was received in payment. But it can be of no consequence if it does tend to prove this, when the court has expressly found that the check was not received as payment. Besides, Underhill, having no funds in the bank on which the check was drawn, was not entitled to notice of non-payment, and Miller & Hickie, being debtors for the freight, and having lost nothing upon a check for which they paid nothing, must be regarded as offering their own check, and can not complain of the want of notice.

Again, it is said by the defendants, that the retention of the check by the plaintiff and his neglect to tender it to the defendants prior to the commencement of the suit or upon the trial, his transfer of the check to third parties, and his neglect to notify the defendants of the transaction between himself and Miller & Hickie, amounted in law to a payment of the freight. But no inference against the plaintiff can be derived from his retention of a check on which he could have no action against the defendants and which the law entitled him to regard as a nullity, or from his neglect to tender to the defendants a worthless piece of paper which had been imposed upon him by fraud, or from his transfer of the check to third parties before he discovered the fraud, or from his neglect to notify the defendants of the transaction between himself and Miller & Hickie, when it is considered that the plaintiff never undertook to act as the agent of the defendants, that they had greater means of knowledge than the plaintiff, that about the time of the maturity of the check Hickie sold his interest in the firm of Miller & Hickie to one Parrott, and that soon after Miller & Parrott went into insolvency, making the defendants their assignees and preferred creditors. It is said by the defendants that they gave credit to Miller & Hickie for the freight, supposing that the same had been paid by them to the plaintiff. But as the books, papers and funds of Miller & Hickie passed almost immediately into the exclusive possession and control of the defendants, they had power to correct the credit if made, and no estoppel could result from this fact, both because the credit was not given in consequence of any act of the plaintiff, for the defendants had no knowledge of his act, and for the further reason that the defendants have not been in any way injured by the entry of the credit on their books. They had no right to presume that the freight had been paid. It was their duty to ascertain the fact, and if they had been in fact subjected to loss by reason of their ignorance on the subject, it would not be the fault of the plaintiff, who assumed no duty whatever with regard to the collection of the freight or the giving of notice to the defendants if it was not paid.

SANFORD, J. Upon the facts found by the superior court the plaintiff was entitled to his judgment. The defendants became indebted to him upon the delivery of the stone to Miller & Hickie, and nothing has since been done to discharge their liability. He had no express or implied authority from the defendants to collect the freight of Miller & Hickie. Even the usage found by the superior court, only authorized masters of vessels engaged in that trade to collect their freight from the consignees upon orders given them by the consignors, and the plaintiff neither had nor assumed to have such order. Both the plaintiff and Miller & Hickie knew that by the terms of the contract between Miller & Hickie and the defendants, the former had a right to pay the freight only in money, and that the plaintiff had no authority to collect or receive it from Miller & Hickie even in that. The transaction between Miller & Hickie and the plaintiff, therefore, was a personal affair with which the defendants had nothing to do, and of which they had no information until after the dishonor of the draft, and after the insolvency of Miller & Hickie. Notwithstanding the plaintiff's reception of the draft, therefore, the defendants might have sued Miller & Hickie for the freight even before the maturity of the draft. And had the draft been paid to the plaintiff at its maturity it would have been a payment to the defendants, or not, at their election.

When one assumes to act for another without a prior authority so to act, the party in whose behalf the act was done may afterwards adopt, and thus, by ratifying, make the act his own. But here was no assumption of authority to act for the defendants, and consequently there was nothing for the defendants to adopt or ratify.

Their entry to the credit of Miller & Hickie on their books was no adoption or ratification of the plaintiff's act, because, as already remarked, the plaintiff did not assume to act in their behalf but in his own; because what he had done was not made known to the defendants, and they could not ratify an act of which they had no information; and because that credit was entered under a supposition that the freight had been paid to the plaintiff, which supposition was in fact unfounded.

What effect the plaintiff's omission to give notice of the dishonor of the draft, and his retention and subsequent delivery of it to the other owners of the vessel, ought to have upon his rights, would be a proper question for discussion in a suit between him and the indorsers or drawer of the bill, but as between these parties it is of no importance, and indeed can not properly be made.

The plaintiff took the draft at the solicitation of Miller & Hickie to collect, with authority from them to pay over or account for its proceeds to the defendants, when collected, but he assumed toward the defendants no other duties or responsibilities whatever. Towards them, this well-meant though unauthorized and fruitless attempt in this way to collect the freight to which they were entitled, was but a voluntary courtesy undertaken with a view to their accommodation and intended for their benefit, and in no way prejudicial to their interests. That the plaintiff considered it, as we think it was, a personal transaction of his own with Miller & Hickie, is evinced by the fact that he advanced to Miller & Hickie upon the receipt of the draft, ten dollars of his own, that he indorsed and procured the draft to be discounted and used the proceeds, and that when it was dishonored he took it up but gave to the defendants no notice of such dishonor, or of his proceedings in regard to it.

There is no estoppel in the case. Where a man by his conduct or declarations willfully causes another to believe in the existence of a certain state of things, and induces him to act upon that belief so as injuriously to alter his previous position, the former is precluded from setting up as against the latter a different state of things as existing at that time. *Brown* v. *Wheeler,* 17 Conn., 353. *Taylor* v. *Ely,* 25 id., 250. But the plaintiff in this case, neither by word or deed, willfully or even knowingly, induced the defendants to suppose that the freight had been paid to him, or to give Miller & Hickie credit for it on their book. He gave the defendants no information of the transaction between him and Miller & Hickie, treating it throughout as a matter with which the defendants had nothing to do. The defendants knew, as he

knew, that he had no authority from them to collect the freight, or to detain the cargo until the freight was paid. When he had delivered the stone to Miller & Hickie he had performed his contract, and done all that the defendants had any right or reason to expect him to do in their behalf. It was the business of the defendants to collect their freight, or at the least to ascertain whether it had been paid or not, but so far as this record shows they made no inquiry. The supposition then on which they acted, in omitting to collect their freight from Miller & Hickie, and in giving credit for it on their books, was a supposition which was chargeable to their own neglect and for which the plaintiff was not responsible.

There is no error in the judgment complained of and it must be affirmed.

In this opinion the other judges concurred.

Judgment affirmed.