**Brown** *against* **Wheeler**.

17  345
75   38
75  603

*A*, in 1815, gave by will one third of his real estate to *B*, his wife, during her widowhood, and the residue to his two sons, *C* and *D*. *A* died soon afterwards. In *December* 1826, *B*, *C* and *D* entered into an agreement in writing, signed by them, but not under seal, that certain persons therein named should assign to each the shares to which they were respectively entitled, under the will of *A*. These persons accordingly made a division of the estate between the devisees, designating the share of each, by a definite description ; and the devisees immediately went into possession of their respective shares. In *June* 1828, *B*, in confirmation of this division, and to remove any doubts as to its validity, gave a release deed to *C* of all right she might have in his share. About the same time, *C* conveyed to *E* his share, and also his interest in the share assigned to *B* ; and in *May* 1843, *E* conveyed the same estate to *W.*, who thereupon entered upon the land assigned to *B*, claiming to be tenant in common with her. In an action of trespass *qu. cl. fr.* brought by *B* against *W*, it was held, 1. that the agreement between *B*, *C* and *D*, and the subsequent division by the persons designated for that purpose, did not constitute such a distribution or division of the estate, as the statute provides

New-London,
July, 1845.

Brown
r.
Wheeler.

for; but 2. that *B*, being in the possession and actual occupation of the property, had a right to recover of any person committing a trespass thereon, unless such person could show a title; 3. that *B*, having so far performed the agreement, on her part, a court of chancery, upon well settled principles of equity, would carry it into effect, on the other; 4. that a court of law would regard the agreement and division as a submission and award, and give to them the same effect, so far as to estop the parties from claiming any right or title in opposition thereto; consequently, that *W*, who had no title except such as he derived from *C*, was estopped from contesting the validity of the division.

It is not essential to the nature or validity of a submission and award, that there should have been a previous controversy between the parties regarding the subject matter.

An estoppel affecting the right of a party in real estate, may be created by matter *in pais*.

Matters of estoppel *in pais* consist of the acts or declarations of a person, by which he designedly induces another to alter, injuriously to himself, his previous position.

THIS was an action of trespass *quare clausum fregit*, brought in *March* 1844, alleging the wrongful acts complained of, to have been committed by the defendant, between the 1st of *June* 1843, and that time.

The defendant pleaded the general issue; on which the cause was tried, at *Norwich, March* term 1845, before *Storrs*, J.

The plaintiff claimed title to the premises described in the declaration, as the widow of *Thatcher Brown*, by virtue of his last will, dated *March* 9th, 1815, which was adduced in evidence, having been duly proved and approved. By this instrument, the testator gave one third of his real estate to the plaintiff, while she remained his widow; and to his two sons, *Thatcher* and *Jedediah*, and the survivor of them, all the rest of his real estate. The plaintiff claimed to have proved, that ever since his death, in 1815, she had been in possession of the premises.

The defendant claimed to be tenant in common with the plaintiff, by virtue of a deed, dated *May* 31st, 1843, from the administrator of *Roswell Brown*, who had the interest of *Thatcher Brown*, one of the devisees in the will, by virtue of a deed from him, dated *June* 27th, 1828.

The plaintiff introduced in evidence an agreement, dated *December* 11th, 1826, signed by the plaintiff, and *Thatcher* and *Jedediah*, the devisees under said will, but not under seal, by which it was agreed as follows: " That *Jeremiah York, Asher*

New-London,
July, 1845

Brown
v.
Wheeler.

*Minor* and *Ichabod Brown* shall distribute and set out the widow's thirds of the real estate of her late husband, *Thatcher Brown*, deceased, according to his will; and also, they shall make a division between *Thatcher Brown* and *Jedediah Brown*, sons of the said deceased *Thatcher*, of all his real estate, according to the last will and testament of said deceased; and that the distribution and division so made by them, shall be binding on us, the parties." The plaintiff then introduced the following writing: " Agreeably to the foregoing agreement, we, the subscribers, proceeded to set out to the above-said widow, *Esther Brown*, all the dwelling-house that belonged to the above-said *Thatcher* deceased, with the lands adjoining, bounded, &c. [describing the premises:] Furthermore, proceeded to set off to *Jedediah*, son of said *Thatcher* deceased, as his share of the remainder of said real estate, the following described lot of land, bounded, &c. Also set off to *Thatcher Brown*, son of said *Thatcher* deceased, as his share of the real estate, exclusive of his mother's thirds, all the remainder of the real estate which belonged to *Thatcher Brown*, late of *North-Stonington*, deceased. [Signed]—*Jeremiah York, Asher Miner, Ichabod Brown*, distributors." In connexion with these writings, the plaintiff introduced the deposition of said *York*, by which he claimed to have proved the due execution of said writings, by the persons purporting to have signed them respectively; that the latter writing was duly published, by the signers thereto, and by them delivered to the parties to said agreement; and that the plaintiff was ever thereafter in the peaceable possession of the premises, under said writings. These facts were denied by the defendant. He also objected to the admission of said writings and of *York's* deposition in evidence; but the court admitted them.

The plaintiff offered in evidence a deed from her to *Thatcher Brown*, one of the devisees, dated *June* 30th, 1828, releasing to him her right in the lands distributed to him, by said distributors. This deed contained the following clause: " The reason of giving this, is, that some doubts have arisen as to the validity of the distribution in law, and this is to confirm the same." To the admission of this deed in evidence the defendant objected; but the court admitted it.

The plaintiff claimed and requested the court to charge the

jury, that if the facts which she claimed to have proved, should be found true, the defendant was estopped thereby, in connexion with the facts admitted, from denying that the plaintiff had acquired a title in severalty to the premises, and that such title and possession gave her good right to maintain this action against the defendant. This claim the defendant resisted. The court charged the jury in conformity to the plaintiff's claim ; and they returned a verdict in her favour. The defendants thereupon moved for a new trial, for the admission of the evidence objected to, and for a misdirection.

*Pomeroy* and *Foster*, in support of the motion, contended, 1. That the plaintiff had no title to the premises *as tenant in dower ;* the course prescribed by statute for the assignment of dower not having been pursued. The statute requires that the assignment shall be made by three freeholders, appointed by the court of probate, who shall make return of their doings to that court, which, being accepted by said court, shall ascertain and establish such dower. *Stat.* 189. *tit.* 25. *s.* 2. No such proceedings were had in this case.

2. That there had been, in this case, no *legal distribution* of the estate under the will of *Thatcher Brown*, by virtue of which any title accrued to the plaintiff ; because the distribution in question was not made, either by freeholders appointed by the court of probate, and sworn according to law, nor in pursuance of an agreement between the persons interested, under their hands *and seals*, *accepted* by the court of probate. *Stat.* 234. 236. *tit.* 31. *c.* 1. *s.* 29. 35.    *Munson* v. *Munson*, 3 *Day*, 260.

3. That the distribution in question is not binding on the parties as *an award ;* there being no controversy—no dispute about lines, or quantity or title—to be submitted. *Wats. Arbit.* 32, 3. It was simply an attempt to give effect to the provisions of a will, by setting out dower and distributing the estate, in a manner not authorized or sanctioned by law.

4. That the defendant is not *estopped*, by any thing which appears in the case, to deny the plaintiff's title. Upon general principles, if the plaintiff cannot show a title in himself, he cannot recover : in other words, he must recover, if at all, by his own strength, and not by any infirmity of the defendant. Estoppels are said not to be favoured in law, and must ordinarily

New-London,
July, 1845.

Brown
v.
Wheeler.

be by deed or record. It is true, that certain acts *in pais*, may constitute an estoppel; but the acts relied on in this case, are not of that class. You might as well levy an execution in pursuance of a submission and award, and then claim it as an act *in pais* constituting an estoppel.

The case of *Shelton* v. *Alcox*, 11 *Conn. R.* 240. is relied on, by the plaintiff's counsel, to establish this as an estoppel. But, in the first place, that case and this are not alike. In that case, there was a controversy between the parties respecting the title to a piece of land; which controversy, with all claim for damages by reason of trespasses on the land, the parties expressly agreed to submit to the arbitrament and final award of the arbitrators named; and those arbitrators made a regular and formal award. Here, there was no submission to arbitrators; nor are the doings of the distributors an award. The agreement and return have none of the distinctive marks of a submission and award. Secondly, no positive statute was virtually repealed, by the decision in *Shelton* v. *Alcox*, as it must be, if this is allowed to have the effect of a valid assignment of dower or distribution of the estate. Thirdly, the court in *Shelton* v. *Alcox*, obviously did not intend to overrule the decision in *Munson* v. *Munson*, 3 *Day* 260., but expressly recognized it as a correct decision. But if the distribution in *Munson* v. *Munson* was not valid, neither can this be.

*Strong*, contra, insisted, 1. That the plaintiff, being in possession, was entitled to recover against the defendant, who was unquestionably a trespasser, unless he could show a valid title, derived from *Thatcher Brown*, one of the devisees.

2. That the agreement between the devisees regarding the division of the estate, was binding on them, and those claiming under them. It was an amicable arrangement, which the law will regard with favour.

3. That by virtue of this agreement and the division made in pursuance thereof, *Thatcher Brown*, who has taken the share allotted to him, is estopped from saying that the plaintiff is not entitled to her share. *Shelton* v. *Alcox*, 11 *Conn. R.* 240. is decisive of this point.

WILLIAMS, Ch. J. The objections to the evidence and to the charge, have not been argued separately by the counsel,

and need not be separately considered by the court : for they really resolve themselves into one, that is, the efficacy of the proceedings under the reference to *York* and others.

The parties both claim under the will of *Thatcher Brown ;* the plaintiff directly, the defendant derivatively. *Brown* died in 1815. The plaintiff being in possession of the premises, must have a right to recover, unless the defendant can show a title. This he attempts to do, by showing he is tenant in common, and has a right to occupy with her.

It seems, that the husband of this plaintiff, and the father of one of the devisees under whom the defendant derives his title, died some thirty years since, and his widow has been in possession of the premises since that time. After the children became of age, in 1826, it was agreed between her and them, that a division should be made of the estate among them, by three persons, whom they named. This agreement was in writing, and the doings of these persons under it were also in writing ; and the plaintiff then occupied these premises until 1843, when this defendant entered in, and committed the acts complained of in this declaration.

It is not pretended, that the defendant had any other or greater right than *Thatcher Brown,* the son, had ; nor that if he, the devisee, and a party to this agreement, was bound by what was done under it, but that the defendant was also bound by it.

The question then arises, what was the effect of this agreement between the parties in interest, to submit the subject of this devise of the estate to these three men, and their actions under it, with the subsequent occupation.

The counsel for the defendant say, that this was not such a distribution as our statute requires, and consequently, was no distribution : it was not such a conveyance as our law requires, and therefore, no title can pass, and no severance be had.

That this is not a distribution such as the statute requires, and that this division is not evidenced by deed, is certainly true. But the plaintiff is in possession of this property, in the actual occupation, and has a right to recover of any person committing a trespass thereon, unless such person can show a title. How does the defendant attempt to do this, by setting up a title in *Thatcher Brown,* as tenant in common ? The plaintiff

says, you shall not be allowed to do this; for *Thatcher Brown* agreed to a division of this property, to be made by persons chosen for the purpose; and it was made; and *Thatcher Brown* has taken the benefit of it, by receiving a deed of land set to him under said distribution, and expressly to confirm the same; and this two years after that distribution. Under such circumstances, it would be most inequitable and unjust, that he should now claim a right in the other lands set to his mother; and there can be no doubt that, upon well settled principles of equity, this agreement being so far performed on the one part, a court of chancery would see that it was carried into effect on the other.

*New-London,*
*July,* 1845.

Brown
*v.*
Wheeler.

It is true, we are in a court of law; and we must see whether the principles of law will support this claim.

The plaintiff claims, that this division is in nature of an award, and that it has been settled, that though an award respecting lands is not binding upon the parties, as an award, still it shall operate as an estoppel.

To this it is answered, by the defendant, that there is no award; for there was no dispute between the parties; of course, no submission, and no award. Now, we do not understand, that there must be a law-suit, or even a quarrel, to make valid a submission and award. Two persons not agreeing about the location of a boundary, or a division of a common interest, may as well refer these questions to mutual friends, as if an action of trespass had been commenced, or an assault and battery had occurred in consequence of the dispute. A submission to arbitration is for the purpose of an amicable and easy settlement of a doubtful concern; and it is wholly immaterial whether there be any actual controversy or not. In this case, a female and two young men have an interest in common in lands; neither perhaps sufficiently acquainted with their value to know what they ought to claim, and each anxious for their just rights. What course more proper to preserve harmony in a family, than to have this settled by mutual friends? Such a course is as proper to prevent controversy, as to settle it when begun. One of the modes of making partitions at common law among parceners, given by *Littleton*, is, "to choose, by agreement between themselves, certain of their friends to make partition of the lands or tenements;" and then the parceners might select according to sen-

Brown
*v.*
Wheeler.

iority : or " it may be agreed between themselves, that one shall have such tenements, and another such tenements, without any primer election." *Co. Litt.* 166. *sect.* 244.    We see no difficulty, therefore, from the fact that there was nothing to submit.

It is said, the transaction has none of the distinctive characters of an award.    Now, if there was a submission of something to be settled by these men, it would seem that the opinion given upon the subject would be an award.    There is no technical language in which an award must be clothed.    Where parties agree to submit to and abide the opinion of others, that opinion, clearly and definitely expressed, constitutes an award.    The friends selected go on, and allot shares marked out by boundaries to each devisee, so that each shall know his own separate part from the rest.    They thus fulfil the duty imposed upon them, by adjusting the subject matter referred to them ; and this is all any arbitrators can do by their award. It is said by Judge *Thompson,* a partition made by persons appointed for the purpose, might be considered in nature of an award.    *Shepherd* v. *Rogers,* 15 *Johns. R.* 497.    It is not therefore easy to see, why this case does not fall within the principle established by this court, in *Shelton* v. *Alcox,* 11 *Conn. R.* 240.    That was a mere question of title.    This is a question merely as to the division of an acknowledged title. There, this court held, that although the award could not conclude the title, it might prevent the party against whom it is made, and those claiming under him, from contesting such title again.    And in this case, though this decision may not have the full effect of a distribution under the statute, we can see no reason why it should not conclude the parties from claiming against it, as much as if the question was a mere question of title.

It is said, that in this case, there is a statute law directing the mode of distribution.    And so there is a statute law directing how title to real estate shall pass, not derived from descent. In the one case, it is through the courts of probate ; in the other case, by deed ; and it is as explicitly declared how it shall be done, in the one case, as in the other.

It is not intended to go over the authorities adduced on the former occasion.    A recent case in the state of *Vermont* has occurred, where the court say, it is not necessary to decide

how it might be, when the title was in dispute, but held, that

where the line between adjoining proprietors was in dispute, a settlement of that line by arbitration, would estop the party from claiming contrary to such award. *Stewart* v. *Cass*, 16 *Verm. R.* 663.

It is true, that in some of the states, doubts have been expressed, whether in case of real estate, the estoppel must not be by deed. This certainly is not the common law. *Littleton* says—" And so a man can see one thing in this case, that a man shall be stopped by matter in fact, though there be no writing, by deed, indenture or otherwise ;" and Lord *Coke*, commenting hereon, gives as an instance of estoppel by matter in fact, this very case of partition. *Co. Litt.* 356. *sect.* 667. And such an award has in *England* been held sufficient to estop a party against whom ejectment was brought, from setting up his title. *Doe* d. *Morris* & al. v. *Rosser*, 3 *East*, 15.

But in the case before us, here is not only the agreement that the award should be binding upon the parties, as in the case above referred to, and in *Shelton* v. *Alcox* ; but the parties have acted under it for about eighteen years ; and the persons under whom the defendant claims, took a deed of this plaintiff, confirming that award, as to most of his part of the lands set to him. This is a feature in the case, which does not exist in *Shelton* v. *Alcox.* Now, the rule as it regards estoppel *in pais*, is, that where a man, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as injuriously to alter his previous position, the former is concluded from averring, as against the latter, a different state of things as existing at that time. *Pickard* v. *Sears*, 6 *Ad. & El.* 469. (33 *E. C. L.* 115.) *Gregg* v. *Wells*, 10 *Ad. & El.* 90. (37 *E. C. L.* 54.) Cases are numerous in this country, where a person has asserted a fact, upon faith of which another acts, and will receive damage, if that fact is not true, where it has been held, that he shall be estopped from contradicting it.

Thus where *A* told an officer, who was directed to attach the property of *B*, that *B* owned one fifth of certain boards, which, in consequence, were attached and sold at the post ; *A* was not allowed to set up a claim that *B* was to assist him

in certain work upon the boards, before his title should be complete. *Stephen* v. *Baird*, 9 *Cowen* 274. So if *A* receipts the property of *B* as his, in consequence of which the officer forbears to attach other goods of *B* ; *A* cannot set up a claim to these goods as his own. *Dezell* v. *Odell*, 3 *Hill* 216. *Dewey* v. *Field*, 4 *Metc.* 381. *Morrison* v. *Blodget*, 8 *N. H. R.* 238. *Reynolds* v. *Lownsbury*, 6 *Hill*, 53.

So where one about to distrain for rent, was informed, by the tenant, that he owned nothing, or but a trifle, on the premises ; in ejectment brought for default of payment of rent, the tenant offered to show there was sufficient property on the premises ; the court said, he was estopped from disputing the truth of his representations. *Pres. Cong. of Salem* v. *Williams*, cited 8 *Wend.* 483.

In *Massachusetts*, it has been said, such declarations, not acted upon, may be strong evidence against the party making them ; but when acted upon by the party to whom they were addressed, to his prejudice, (if the fact were otherwise,) they will be conclusive. *Wallis* v. *Truesdale*, 6 *Pick.* 455.

Look at the situation of the parties in this case, in connexion with these principles. Nearly twenty years since, *Thatcher Brown*, whose rights are now set up by the defendant, agreed with the plaintiff, that the decision of certain friends, in dividing their common property, should bind him ; in consequence of which, the plaintiff goes into, and ever since continues in, possession of a certain part set to her ; and *Thatcher Brown* sells the part, or most of the part, set to him ; and lest she should ever question the title acquired by the division, he requires of her, and she executes to him, a deed of the property by him sold, thus depriving herself of all interest in that portion of the estate. And now, at the end of sixteen years, it is claimed, that this division is nothing ; and in face of the agreement that the decision should be binding, in face of the deed expressly taken by him to remove doubts on the subject, after having acquired all the benefits of the division, he, or his representative, asks the court to suffer him to say, that this was a mode of distribution unknown to our law. If ever the doctrine of an estoppel *in pais* is to prevail, it would seem as if this was the case. Any other construction would enable the party to perpetrate a most gross fraud. In this respect, the case differs entirely from *Munson* v. *Munson*, 3 *Day* 260. so

much relied upon by the defendant. In that case, no question <span style="font-style:italic">New-London,</span> of estoppel was made, or decided by the court; and there was no fact shown, by which it appeared, that any act was done under the award, or that any injury would arise to the plaintiff, by its violation. This is sufficient to distinguish the case on trial from that; and if the case of *Munson* v. *Munson* is not to be distinguished from the case of *Shelton* v. *Alcox*, we should adhere to that as the latest and best authority. We think, therefore, the defendant has no reason to complain.

It was further claimed, on the part of the plaintiff, that if the defendant was right in his defence, and there had been no division, then the deed under which he claimed must, for the same reason, be void; being given by one tenant in common of lands held in common, by metes and bounds, and not an undivided interest.

But there is nothing in the motion tending to show, that this question was made below; and the deeds do not seem clearly to show, in this respect, the state of the title. The court therefore give no opinion upon this point; but think there ought to be no new trial.

In this opinion the other Judges concurred, except CHURCH, J., who was not present.

New trial not to be granted.