JOHN H. GARNHART, Respondent, *v.* JOHN FINNEY, Appellant.

1. *Landlord and Tenant — Waiver of Forfeiture — Rents.*— The acceptance of rent by the landlord after full notice or knowledge of the breach of condition for which a forfeiture might have been demanded, is a waiver of the forfeiture which cannot afterwards be asserted. To show a waiver and the determination of the landlord to disclaim the reversion and continue the lease, slight acts are sufficient, and any recognition of a tenancy as subsisting after the right of entry has accrued and the lessor has notice of the forfeiture will have the effect of a waiver. Where an estate in land has become subject to forfeiture by non-performance of conditions at the day, the forfeiture will be waived by accepting performance at a subsequent day, and the acceptance of the performance of a new and substituted agreement will have the same effect. A landlord having waived his right to declare a forfeiture, cannot afterwards refuse to comply with his covenants for a renewal of the lease.
2. *Landlord and Tenant—Estoppel.*—A landlord may by his acts be estopped from setting up a breach of the conditions of the lease and demanding a forfeiture.

### Appeal from St. Louis Circuit Court.

The court gave the following instructions to the jury:

1. The plaintiff cannot recover in this cause unless he has proved to the satisfaction of the jury, that the lease read in evidence made by John Finney to Henry C. Brown was by written assignment transferred to the plaintiff with the assent of defendant; that within the time specified in said lease, or if the time was extended within such time as extended by John Finney, the lessee, or some person claiming under him, erected, or cause to be erected, on the ground mentioned in said lease, three good and substantial three-story brick houses, covering the entire southern front of said ground, and that all of the materials of every kind used in the erec-

tion of said houses were of good merchantable quality, and that the joists and timber used therein were of proper sizes for such houses, and that all the outside walls were thirteen inch walls ; or, that while said three brick houses were being erected on said premises, it was ascertained that they were not being built in conformity with the requirements of said lease, and that by reason thereof, and to save the forfeiture incurred thereby, Rhodes and the defendant agreed that if certain changes and alterations were made as determined upon by G. F. Barnett and L. D. Baker, and that such changes and alterations were made in accordance with the plans and directions of said Baker and Barnett, and that after such changes and alterations were made the said John Finney agreed to accept and did accept said houses, so altered and added to, as a full compliance with the terms of said lease in regard to the said three-story buildings.

2. If the jury, under the instruction No. 1, find the plaintiff is entitled to recover, they will assess his damages at the actual damage which they believe, from all the evidence, he has sustained by reason of the refusal of the defendant to renew said lease.

3. If the jury are satisfied from the evidence in this cause that said lease was not transferred by written assignments to said Garnhart, or that said three houses were not erected as specified in the instruction No. 1, or that said John Finney did not agree to accept, and did not accept, said houses, as altered and added to, as stated in said instruction No. 1, they will find for the defendant.

To the giving of these instructions the defendant excepted.

The defendant asked the following instructions :

1. If the jury believe from the evidence that on the 1st day of June, 1851, there had not been built on the lot demised by John Finney to H. C. Brown, by the lease read in evidence, three good and substantial three-story brick houses, covering the entire southern front of said lot, said houses be-

Garnhart v. Finney.

ing of proper depth for stores or dwelling-houses—all materials of ever kind used in their construction being of good merchantable quality, the joists and all other timbers being of proper size for such houses, and all outside walls being thirteen inches thick,—then the building covenant contained in said lease, to be performed by said Brown or his legal representatives, was broken, and in order to enable the plaintiff to recover in this action the said plaintiff must show that there was a new contract or agreement made between the legal representatives of said Brown and the said Finney stipulating for the renewal of said lease of the 1st of June, 1859, and there is no evidence of such a contract.

2. By the terms of the lease executed by defendant to H. C. Brown, and in evidence, the said Brown and his assigns covenanted to build on the lot demised within two years from the 1st of June, 1849, three good and substantial three-story brick houses, covering the entire southern front of said lot; said houses to be of proper depth for stores or dwelling-houses; all materials, of every kind, used in the erection of said houses, to be of good merchantable quality; the joists, and all other timbers, to be of proper size for such houses, and all outside walls to be thirteen inches thick. By another covenant in the lease the defendant agreed to renew the lease at the expiration of ten years, provided the lessee or his assigns should have performed all the covenants mentioned in the lease to be performed by said lessee or his assigns. The plaintiff brings this action in virtue of the last named covenant. The action can be maintained only in one of two cases: first, in case the said lessee or his assigns performed their covenants as stipulated in the lease; or, secondly, in case they did something which the defendant agreed to accept as an equivalent for such performance. After the 1st of June, 1851, no verbal agreement or promise between the defendant, on the one hand, and the holder of the leasehold, on the other, could have the effect of enabling the plaintiff to maintain this action, provided that on the 1st of June, 1851, the said covenant to build was broken; and it was

broken if on that day the houses called for by the lease had not been erected on the Morgan-street front of said lot.

3. If the jury believe from the evidence that H. C. Brown, or his assigns, had not before the 1st of June, 1851, erected upon the lot demised by defendant, according to the lease read in evidence, three good and substantial three-story brick houses, covering the entire southern front of said lot, said houses being of proper depth for stores or dwelling-houses—all the materials of every kind used in their construction being of good merchantable quality, the joists and all other timbers being of proper size for such houses, and all outside walls being thirteen inches thick,—the building covenant contained in said lease, to be performed by said Brown or his assigns, was broken, and a covenant for a renewal of said lease, to be performed by the said defendant at the end of ten years from the 1st of June, 1849, was discharged; and the plaintiff cannot recover in this action without showing a new agreement in writing, signed by the defendant, expressly stipulating to renew the said lease, notwithstanding the breach of said building covenant. It will not be sufficient for this purpose that the jury should believe that some time after the 1st of June, 1851, the defendant agreed, either verbally or in writing, to extend for a specified time the period within which any of the covenants of the lease to be performed by the said H. C. Brown, or his assigns, might be completed. Nothing short of a contract in writing, signed by defendant, to renew the lease at the expiration of the ten years, will enable the plaintiff to maintain the action.

4. If, in putting up the building on the Morgan-street front of the lot described in the lease in 1855, Rhodes, the owner of the leasehold, used materials and workmanship inferior to what are called for by the lease, as explained in a former instruction; and if some of the defects caused in the building thereby were visible and apparent to the defendant and objected to by him at the time, but others were for the time hidden from his observation, and for that reason not commented upon by him; and if by reason of inferior workman-

ship, care and materials so used by the said Rhodes, but not then known to the defendant, the buildings erected by him on said Morgan-street front of said lot fell short of the description of the buildings called for by said lease, then the said building covenant was broken, and the plaintiff cannot recover.

5. If the jury believe from the evidence that after the 1st day of June, 1851, the covenant contained in the lease read in evidence respecting the building of the houses on the Morgan-street front of said lot having been unperformed and broken, there was a conversation during the summer of 1851 between L. F. Hastings, then the owner of said leasehold, and the defendant, in which the defendant, as a matter of indulgence and favor to said Hastings, promised that if the said buildings were erected within three years of additional time, then that defendant would take no advantage of their not having been erected within the first two years of said term; and if the jury believe that this was the only extension of time granted by defendant for the erection of said buildings, and that the same were not completed until the month of October, 1855, then the plaintiff is not entitled to recover in this action.

6. If the jury believe from the evidence that in the year 1855, while Rhodes was engaged in building the houses on the Morgan-street front of the lot demised to H. C. Brown by the lease read in evidence, the defendant objected to him that the same were not being built according to the lease, and threatened him with forfeiture of the said lease; and if the jury believe from the evidence that the said Rhodes was erecting houses on said front of a kind inferior in materials and workmanship to those called for in the lease; and if the jury believe that the said Rhodes and defendant did thereupon call on L. D. Baker and George Barnett to determine upon the changes, alterations and improvements of the said buildings to be made by the said Rhodes with the view of escaping the law of forfeiture; and if they further find that said Baker and Barnett did agree upon certain changes, al-

terations and improvements of said buildings to be made by said Rhodes under the supervision and to the satisfaction of said Baker, as the condition on which said forfeiture was to be waived,—then, unless the plaintiff has shown affirmatively that said changes, alterations and improvements were made by said Rhodes, and that the said Baker approved the same after they were completed, the plaintiff cannot recover in this action.

7. If the jury find from the evidence that the three three-story brick buildings required by the terms of the lease to be erected on the Morgan-street front of the premises in question were not erected prior to June 1, 1851, nor prior to the time that Leverett F. Hastings became assignee of said lease; and if the jury further find from the evidence that said Hastings, while he owned the said leasehold premises, made application to the defendant for an extension of the time within which to erect said three three-story brick buildings, and that the defendant verbally granted to said Hastings a further time of two or three years from June 1, 1851, within which to erect said buildings; and if the jury further find that said buildings were not erected and completed within said extended time, then the plaintiff cannot recover in this action, and the jury should find for defendant.

8. The plaintiff cannot recover in this action unless the jury are satisfied from the evidence that within two years from June 1, 1849, or within the extended time—if the jury find the time was extended—Henry C. Brown, or some party claiming under him, erected or caused to be erected on the Morgan-street front of the premises in question three good and substantial three-story brick houses, covering the whole of said front, and that all the materials of every kind used in the erection of said houses were of good merchantable quality, and that the joists and timbers used therein were of proper sizes, and that all the outside walls thereof were thirteen inch walls; or that, while the said three three-story brick houses were in course of erection, it was ascertained that they were not being built in conformity with the require-

ments of the lease, and that Jacob Rhodes, within the time specified in the lease, or within the extended time if the time was extended, made certain alterations spoken of by the witnesses in said buildings, and that after said alterations were made the defendant agreed to accept and did accept the said three houses so altered or added to, as a compliance with the terms of the lease in regard to such buildings.

9. The jury cannot infer either from the silence or the acts of the defendant that he consented or admitted that the buildings erected on the Morgan-street front of the premises in question were erected of materials and in a manner satisfactory to him. The express assent or admission of the defendant must appear from the evidence in the case.

10. If the jury find for the plaintiff, they can only assess in his favor the actual damage sustained by him by reason of the refusal of the defendant to execute a lease to the plaintiff of the premises described in his petition for a term of ten years from June 1, 1859.

11. In assessing damages in this case, the jury cannot allow in their assessment in favor of the plaintiff the amount or sums of money spoken of by the witnesses which the plaintiff expended for repairs upon the leasehold premises in question.

12. If the jury find from the evidence that the plaintiff, by his tenants, from and after June 1, 1859, occupied the premises in question until the tenants were put out by the defendant, the jury, in assessing damages in favor of the plaintiff, may deduct from the value of the leasehold premises on the 1st of June, 1859, whatever sum the jury shall believe from the evidence the said occupation of the premises was worth to the plaintiff.

13. If the said H. C. Brown and his assigns, up to the end of the month of October, 1855, had failed to keep and perform the building covenant contained in the lease, then the covenant for the renewal of said lease was discharged, and plaintiff cannot maintain this action without showing a new agreement for the renewal of the said lease, and such agree-

ment cannot be shown except by writing signed by the defendant; and there is no evidence of such an agreement.

14. If the buildings erected on the lot demised by Jacob Rhodes were, when completed by him in October, 1855, inferior in material and workmanship to those called for by the building covenant in said lease, then the plaintiff cannot recover in this action.

Which instructions the court refused to give, and the defendant excepted.

*Krum, Decker & Krum,* and *T. T. Gantt,* for appellant.

The court below erred in admitting parol evidence, as well as proof of facts *in pais,* to show the assent of the defendant to the assignment of the lease in question, and also to show that he had either agreed to change its terms, or extend the time for the performance by the lessee of his covenant to build, or that defendant had waived its performance.

All of this evidence was objected to by the defendant in due form, at the trial, on the following grounds : (*a*) Because by the terms of the lease it cannot be assigned without the written consent of the lessor. (*b*) Because the time for the performance of the covenant to build, &c., cannot be changed or waived by a parol agreement, or by acts *in pais,* on the part of the lessor. (*c*) Because all evidence of this character is in conflict with the provisions of the statute of Frauds and Perjuries—1 R. C. 807; 2 Platt on Cov. 264–7; Tay. Land. & Ten. § 411 ; 15 J. R. 200.

*Glover & Shepley,* and *Cline & Jamison,* for respondent.

The same facts which are contained in the present record were before this court in Finney v. City, 34 Mo. 303. It was then held that " the plaintiff was entitled to the renewal of the lease, yet the remedy was in another form of action." The vital question here is whether Garnhart, the assignee of Brown, was entitled to a renewal of the lease under the evidence. It was admitted that the building covenant was not performed according to the strict terms of the lease ; but

the respondent Garnhart insists that during the erection of the buildings a modification of the building clause was assented to by Finney so as to bind him to treat the same as performed. It is admitted that a mere oral agreement is not competent to alter or modify a written contract, but it is contended that an oral agreement acted on by both parties, and the action under it accepted instead of the original stipulation, is obligatory, and does effectually alter the original written stipulation.

An oral agreement to alter a written contract, fully carried out, amounts to a discharge or satisfaction—Townsend v. Empire Stone-dressing Co., 6 Duer, 214; Delaiseix v. Buckley, 13 Wend. 75; Latimore v. Horser, 14 J. R. 330; 1 Greenl. Ev. §§ 303–4.

The rule of law which prevents such injustice is, that when one relies on the verbal representations of another, and, so relying, acts to his injury, the other shall be held to his declarations, statements, or promises—Dyer v. Cady, 20 Conn. 563; Brown v. Wheeler, 17 Conn. 353; Roe v. Jerome, 18 Conn. 138; Cowles' Ex'r v. Baun, 21 Conn. 467.

The defendant is estopped to deny that Rhodes' lease was valid. Whoever prevents the performance of a condition, cannot take advantage of it—Majors v. Hickmot, 2 Bibb, 218; Carrell v. Collins, id. 431; Merford v. Ambrose et al., 39 Me. 688; Clendenin v. Purcell, 3 Mo. 230.

If Finney did not literally prevent Rhodes from performing his contract, he did assent to other things in lieu of performance, and did waive the right of forfeiture incident thereto. This right of forfeiture once waived, was lost forever. It could not be set up again at the end of the first ten years. The party having the right to insist on a forfeiture, must do so or abandon it—Tay. Land. & Ten. § 497.

In Goodright v. Davis, Cowp. 803, the condition was such that underletting, without the consent of lessor under his hand and seal, worked a forfeiture; but it was held that after breach a receipt of rent would waive the forfeiture. Any act of the landlord showing that he means the lease to con-

tinue is a waiver—Doe ex d. v. Mieux, 4 Barn. & Cress. 606 ; Doe ex d. v. Birch, 1 Mees. & W. 408 ; Coon v. Brick, 2 N. H. 163 ; Chrysmon et al. v. Gurine, 5 Cal. 51 ; Jackson v. Allen, 3 Cow. 220 ; Jackson v. Brownson, 9 J. R. 227.

But a covenant of renewal is a mere incident to the lease. If the lease is valid, the covenant to renew is valid—Blackmore v. Boardman, 28 Mo. 425. There is nothing in the supposition that Finney, having waived the forfeiture for non-performance of the building clause, was bound to respect the lease for ten years, but not bound to renew. A waiver is a waiver for all purposes.

HOLMES, Judge, delivered the opinion of the court.

This is an action for damages on a breach of covenant for the renewal of a lease, at the suit of the last one of several successive assignees against the lessor. The lease provided that every failure to pay the quarterly rent reserved, or to pay the taxes, or to keep any perform any of the other covenants, agreements, or stipulations, therein set forth, should " make and create a forfeiture of the lease," if so determined by the lessor, by a notice in writing. The lease was not to be assigned by the lessee, under penalty of forfeiture, without the written consent of the lessor. The lessee bound himself, his heirs, executors, administrators, *and assigns*, to erect three good and substantial three-story brick houses, of a specific quality and description, on the lot demised, within the first two years of the term, which were to be the property of the lessor at the end of the lease and renewals. The lease was for a term of ten years, and was to be renewed for another term of ten years, " provided the said lessee, or his legal representatives or assigns, shall punctually pay all the rents and taxes" which might be assessed and legally demanded, " and perform all the other covenants, agreements and stipulations herein set forth." The renewed lease was to contain similar covenants, except that the rent was to be fixed upon a valuation by appraisement in the lease specially provided ; and a second renewal for still another term of

ten years was to be made in the same manner, and subject to like covenants, agreements, and stipulations.

There was evidence to the effect that some of the successive assignments of the lease had been made without license in writing, and some upon a written consent, which had been lost; but that the lessor had never enforced a forfeiture of the lease for this or any other reason, and had accepted rent, with full knowledge of this failure, from the several assignees in succession, down to the end of the term; that the three houses had not been built within the first two years of the term; that the time had been afterwards extended by the lessor by a writing, which had been lost, or was not produced; and that the assignee in possession, with this knowledge and consent of the lessor, and in pursuance of an arrangement made with him, had proceeded to erect these three houses under the lease, which were still not complete within the extended time, nor to the entire satisfaction of the lessor—but that, upon certain alterations and improvements being made under the supervision of certain arbitrators, the lessor had finally consented not to insist upon forfeiting the lease, and accepted the buildings as they were, as a performance of the covenant, and expressed himself satisfied : he continued afterwards to accept rent as before until the end of the term, and never took any steps to forfeit the lease.

At the end of the term, the lessor refused to renew the lease according to the covenant for renewal, proceeded to eject the tenants, and took possession of the property. He now takes the ground that the covenants and agreements, on which the stipulation for a renewal depended, had not been kept and performed according to the terms and conditions of the lease, and that he was not bound to renew. It is answered, on the other side, that all right of forfeiture for the reason that the lease had been assigned without the written consent of the lessor, or that the other covenants had not been kept, had been waived by the subsequent acceptance of rent, with notice of the cause of forfeiture, and that any right

to refuse a renewal of the lease, on account of any breach of the building covenant, had been waived ; also by his own acts, and by his acceptance of performance of the substituted agreement, that he was estopped to deny that this covenant had not been performed.

The covenant of the lessee, for himself *and assigns*, to build houses on the land demised, binds the assignees by express words, and the covenant runs with the land—Dumpor's case, 1 Smith's Lead. Cas. 102.

The acceptance of rent, after full notice or knowledge of the failure for which a forfeiture might have been claimed, was a waiver of the forfeiture, which could not afterwards be asserted—1 Smith's Lead. Cas. 83 ; Goodright v. Davis, Cowp. 803 ; Roe v. Harrison, 2 T. R. 225 ; Ormsby v. Woodward, 6 Barn. & Cr. 519.

It was in evidence that the landlord elected to retain the reversion with its incidents, and continue the lease, without reentering to take the land itself. Slight acts are deemed sufficient for this purpose, and any recognition of a tenancy subsisting after the right of entry has accrued, and the lessor has notice of the forfeiture, will have the effect of a waiver— 2 Platt on Leases, 468; Tay. Land. & Ten. §§ 497–8 ; Coon v. Brickett, 1 N. H. 163 ; Jackson v. Brownson, 7 J. R. 227 ; Jackson v. Allen, 3 Cow. 220. A man may be estopped by acceptance of rent—4 Com. Dig. (tit. Cov. A. 3) p. 79.

The principle is not confined to a forfeiture for assigning without license, or for non-payment of rent, but extends to any other ground of forfeiture which merly makes the lease voidable, unless the lessee proceeds to enforce the forfeiture by re-entry. Forfeitures are not favored in the law, and where a forfeiture is once waived, the court will not assist it—Cowp. 803. The clause in this lease which gave a right of forfeiture and re-entry for non-payment of rent and taxes, or for any failure to keep and perform the covenants, agreements and stipulations in lease, did not make the lease absolutely void, but only voidable at the election of the lessor. It may be considered as well established that where an estate

Garnhart v. Finney.

in land has been forfeited by non-performance of conditions at the day, the forfeiture will be waived by accepting performance at a subsequent period; and where a covenant has been broken already, the acceptance of performance of a new agreement substituted in place of it will have the same effect—1 Smith's Lead. Cas. 88; Chalker v. Chalker, 1 Conn. 79; Clark v. Jones, 1 Denio, 516; Jones v. Carter, 15 Mees. & W. 718.

This covenant for a renewal depended only upon the condition that the lessee or his assigns should pay the rent and taxes, and perform the other covenants; and the lease was conditioned to be forfeited at the option of the lessor, on notice in writing, upon any failure to keep and perform these same covenants. No forfeiture was enforced during the term. The rents were accepted to the end of the term with knowledge of all causes of forfeiture. The failure to perform the building covenant was certainly well known to him, and the evidence tended strongly to prove that he had granted an extension of the time; that he was fully aware of the progress and completion of the work; that he complained, negotiated, and arbitrated, concerning it; that, upon urgent solicitation, he had forborne to take any steps to forfeit the lease; and that when the work was finished, though not done exactly according to the new agreement or the provisions of the building covenant, he not only accepted it as a performance and expressed himself satisfied, but certainly forbore ever afterwards to claim any forfeiture on account of a failure to keep and perform that covenant or any other. He stood by and saw the work go on, and encouraged the assignee to expend his money in the completion of valuable buildings, which were to become his property at the termination of the lease and renewals. He knew that the work was done under a full persuasion that it would be accepted as a performance, or in place of a performance, of this covenant. The work was done within about four years of the end of the term; and now, after such acceptance, he insists upon a breach of this covenant as a justification for his refu-

30—VOL. XL.

sal to renew the lease, and claims that it had been irrevocably broken before the work began.

It is not to be supposed that the assignee had any expectation that his lease was to end in four years after the erection of these houses, nor that the lessor was not fully aware that he relied upon a renewal of the lease according to its tenor, and depended upon his acceptance as a waiver of all cause of forfeiture and a performance of the covenant. It may as well be said of this waiver as of a waiver of an assignment without license, that to hold otherwise would be "productive of great injustice, and enable a landlord to eject a tenant after he had given him reason to suppose that the forfeiture was waived, and after the latter had, on this supposition, expended his money in improving the premises"—Ormsby v. Woodward, 6 Barn. & Cr. 519; 2 Platt on Leases, 469.

If a man be estopped by the acceptance of rent, and if such acceptance, with knowledge of the previous causes of forfeiture, implies a still subsisting lease, and precludes a forfeiture afterwards for the same causes, why may not the acceptance of performance of this building covenant, or rather of the agreement substituted in the place of it, together with the continued acceptance of rent, be deemed an irrevocable waiver of this cause of forfeiture?

If the lessor intended to refuse a renewal, why did he not so inform the tenant before he began to build? or why did he allow him to proceed with the expenditure of his money? Not to hold that this was not a complete waiver, would be a great hardship upon the plaintiff: and viewing the matters with reference to the whole conduct of the defendant, it would certainly have all the effect, if it did not wear the aspect, of an intentional fraud. When a man by his words or conduct knowingly causes another to believe in the existence of a certain state of things, and induces him to act upon that belief so as injuriously to alter his previous position, the former will be concluded from averring, as against the latter, a different state of things as existing at that time; or asserts a fact upon the faith of which another acts, and will receive

damage if the fact be not true, he shall be estopped from contradicting it.—Brown v. Wheeler, 17 Conn. 353. We think the case comes within the doctrine both of waiver and estoppel—1 Greenl. Ev. § 207; Dezell v. Odell, 3 Hill, 215; Townsend v. Empire Stone-dressing Co., 6 Duer, 208.

The defendant cannot now be heard to say that the covenants of this lease had not been fully performed. It matters not that the building covenant had been broken and the term elapsed. The substitution of a new arrangement, even by parol, which was acted upon by both parties and executed to the satisfaction of the defendant, was enough. It is insisted that the proof of this satisfaction was not clear. We do not lay the whole stress upon this admission that he was satisfied. The facts themselves, the acts of the parties, the forbearance to claim a forfeiture, the acceptance of rent, the confiscation of the buildings, speak louder than his express admissions, and are even more satisfactory.

The first instruction given for the plaintiff placed the issue of a waiver by acceptance substantially before the jury on all the evidence bearing upon the question; and this issue was decisive of the case.

The instructions refused for the defendant proceeded upon a theory of the law which cannot be sustained.

As to damages, the general rule was correctly laid down by the court. It is insisted that the plaintiff was not entitled to recover for the expense of repairs made upon the premises shortly before the end of the first term. This may be so in some cases; but here it was proper for the jury to consider as well the value of the improvements made during this first term as the future value of the leasehold in estimating the actual damage sustained by the plaintiff in the breach of the covenant to renew. The evidence tended to prove that the value of the future leasehold with the renewals was about twenty thousand dollars. The expense of repairs would seem to have been deducted in the verdict, which was for some sixteen thousand dollars only. We see no reason to think the verdict was excessive.

Judgment affirmed. The other judges concur.