# DAVID M. SIMON
*vs.*
# THE MANCHESTER STORES CORP.

Superior Court     Hartford County     File No. 70797

MEMORANDUM FILED DECEMBER 28, 1944

*Bernard P. Kopkind,* of New Haven, for the Plaintiff.

*Harrison D. Schofield,* of Hartford, for the Defendant.

O'SULLIVAN, J. On December 24, 1942, the parties entered into an option agreement for the purchase of a tract of approximately five acres of land in the Town of Manchester owned by the defendant. Included among the many provisions of the agreement were the following: the purchase price was $25,000; the consideration given by the plaintiff to support the agreement was $1,000, which sum was to be retained by the defendant should the option not be exercised, but if exercised, was to be applied upon the purchase price; should the plaintiff fail to obtain, before the expiration of the option, the priorities necessary to cover the construction of contemplated apartment houses or should he fail to obtain within that limitation of time a commitment to insure the placing of a mortgage on the premises, the option was to be null and void; it was to suffer the same fate if the defendant should fail to receive permission from the zoning authorities of Manchester to erect on the land certain proposed buildings; if any of the contingencies just mentioned occurred, the option was to become null and void and the consideration was to be returned to the plaintiff; and finally, the option was to expire on March 1, 1943, unless, before that date, the plaintiff was unable to obtain the

necessary priorities and a commitment for a mortgage and unless the defendant failed to obtain zoning board approval, in either of which events, the term of the option was to be extended for a further period of one month, but under no circumstances beyond April 1, 1943, unless mutually agreed to.

Thereafter, the defendant sought the approval of the Manchester zoning board for the erection of the buildings but, after strenuous opposition developed from adjoining residential property owners, the petition was denied on January 19, 1943, and on March 11th, the board of zoning appeals refused to interfere with the ruling. On the following day, the parties discussed the matter, the result of which was that the defendant returned the $1,000, and so far as the option was concerned, each considered it rescinded. However, the defendant told the plaintiff that it proposed to make further efforts to persuade the appeal board to change its views, a purpose which eventually was attained, not to the extent that the defendant originally had aimed, for the board placed a limitation on its approval. This limitation was reflected in the board's letter to the defendant under date of April 19, 1943, advising that the board would "grant an exception to permit construction of one hundred garden-type buildings *** with the understanding that the plot plan as submitted by you will be followed and that plans and specifications for the buildings are to be submitted to and approved by our board before the granting of the exception." This action of the board was, as the letter indicates, a conditional approval to become effective only upon the board's assent to plans and specifications which subsequently were to be submitted.

A copy of the board's letter was forwarded to the plaintiff on the day it was received, accompanied by the following letter from the defendant:

"I am sending you a copy of the letter from the Zoning Board of Appeals, Town of Manchester, Connecticut, granting the exception to permit erection of one hundred (100) garden-type apartments with the understanding that the layout will substantially follow that of the Land Planning Consultants of the Federal Housing Administration, a copy of which is in your hands.

"You will note too that plans and specifications for the buildings must be approved. I am told, however, that this is

only a matter of form since the Board is unwilling to grant what they call a blank check on a matter which has been so controversial. All they want is a typical exterior of a four-family and an eight-family building and one typical floor plan.

"Please let me know promptly whether your firm wishes to consider such a proposition at the same price previously discussed. I am sorry to have to hurry you but I have several other interested parties and believe I am assured of a sale at a price in excess of that which I am offering to you. This I am doing, first, because I told you I would and, second, because I have confidence in your organization."

Upon receiving these letters, the plaintiff called the defendant by telephone and made arrangements to come from New York to Hartford to meet one Raymond, the defendant's president, who later during the day requested its attorney to prepare a new form of option agreement in a form substantially the same as that of the original option. On April 23rd the plaintiff with his attorney went to Hartford and had a conference with Raymond, who had acted for the defendant throughout the negotiations. It developed that if the land was purchased, the plaintiff proposed to erect buildings of a cheaper standard than previously had been discussed. When this fact was definitely established, Raymond refused to enter into a new option agreement. Raymond was justified in taking this position because he was well aware that the appeal board of Manchester would probably not give its approval to the project if the construction of the buildings was to be on a lower standard than that which the board had been advised would be used and upon which he had been able to persuade the board to grant the exception. All negotiations between the parties ended forthwith. On April 26th the defendant gave to the Alden Development Company an option to purchase the land for $30,000 and the sale was eventually consummated at that figure. This latter corporation was one of those to whom the defendant referred in its letter to the plaintiff under date of April 19th. At no time prior to April 23rd did the plaintiff obtain the priorities or commitment referred to in the option.

By its express terms, the original agreement became null and void on April 1, 1943. While the words "null and void" are often synonymous with voidable, they were not so used in the instant case. The parties intended that, unless they mutually agreed to an extension, the agreement was to become on April 1st as ineffective and useless as though it has never existed.

However, even before that date, it had ceased to have legal life. On March 12th the parties had mutually rescinded the agreement, thereby restoring themselves to their original status.

After an agreement has been rescinded, it can be revived only by mutual consent. There is nothing in this case upon which such assent can be based. The conduct of the parties demonstrates quite to the contrary. When the defendant learned of the board's limited approval, it approached the plaintiff, not for the purpose of reviving the rescinded agreement, but rather to invite him to enter into future negotiations. This was far from amounting to the mutual assent that is necessary to revive an abondoned agreement.

Nor was there a new agreement entered into by the parties. The letter of April 19th was not an offer nor was it intended as such. If from a promise or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer. *Restatement, Contracts,* § 25 *Atlantic Terra Cotta Co., vs. Chesapeake Terra Cotta Co.,* 96 Conn. 88; *Berry & Sons, Inc. vs. Western Union Telegraph Co.,* 109 id. 371.

The language of the letter indicates that the defendant was going no further than to say, in substance, that if the plaintiff was still interested in purchasing the land, the defendant would be pleased to discuss the matter with him. That the plaintiff realized the necessity of re-entering into negotiations and of executing a new agreement is warranted from his action in going to Hartford, accompanied by his attorney, to do the very thing he had been invited to do, namely, to talk the matter over and, if an agreement could be reached, to reduce it to writing.

As the original option was not revived after rescission and as the letter of April 19th was not an offer but merely an invitation to resume contractual relations, the plaintiff has no case against the defendant unless on the theories, urged by him, first, that the defendant has waived its right to maintain that the option is without legal effect and secondly, that it is estopped to make that assertion.

Waiver is the intentional relinquishment of a known right. *Temple vs. New Britain,* 127 Conn. 170, 173. But, all rights the defendant possessed under the option died when the parties agreed to rescind. Hence, the defendant cannot be said to have waived a right having no existence. Whatever right it did enjoy would have arisen from the agreement to rescind, and the sole right it took from that source was its right to insist that the plaintiff had agreed to rescind. If this is the right which the plaintiff claims was waived, the claim would be footless, for the defendant did not, in fact, waive it.

The other theory of the plaintiff is based on estoppel. This is the doctrine by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them whereby, as a consequence reasonably to have been anticipated, he has changed his position in such a way that he would suffer injury if such denial or assertion were allowed. *Brown vs. Wheeler,* 17 Conn. 345, 353; *Cowles vs. Bacon,* 21 id. 451, 467. One essential as related to the party estopped is conduct on his part which amounts to a false representation or concealment of a material fact or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, that which he subsequently attempts to assert. 19 *Am. Jur., Estoppel,* §42, p. 642.

The defendant's conduct does not fall within this limitation. It did nothing which misrepresented or concealed anything from the defendant. It acted fairly at all times, even to the point of giving the plaintiff an opportunity to enter into a new option to purchase the land, and it would have gone through with its plan had it not become convinced on the day of final negotiations that the appeal board would not grant its approval of the cheapened building plans which the plaintiff was proposing to adopt.

The upshot of the foregoing is simply this: first, the option was rescinded on March 12, 1943, by mutual consent and all rights either then had, expired; secondly, the option was not revived at any time; thirdly, the letter of April 19th was

merely an invitation to enter into negotiations and these, though begun, never ripened into an agreement; and finally, the defendant waived no right it enjoyed nor is it subject to estoppel.

Judgment may enter for the defendant.