By the Court. Hoffman, J.
The impressions of the referee may be treated as positive findings of facts. This case would then be presented—that the stone was not furnished as fast as the contract required; that the testimony of the witness Sandford is admissible, and that such testimony proves that the plaintiff did waive any claim for damages arising from such delay to suppiy it.
1st. The first question is, whether the evidence of Sandford, or any evidence short of a sealed instrument, is competent to prove a waiver of the covenant to furnish the stone ? The next, on the assumption of its admissibility, is, whether any waiver is proven ?
It was supposed in Barnard v. Darling, (11 Wendell, 30,) that it was yet unsettled whether an unexecuted parol agreement would have the effect of discharging a sealed instrument. But such an *214 agreement, fully carried out, amounts to a discharge. This last proposition is sustained by several cases. (Lattimore v. Harsen, 11 John. Rep. 330; Dearborn v. Cross, 7 Cowen. 47, and authorities cited. See also Greenleaf on Evidence, § 303, and cases.)
In Delacroix v. Bulkly, (13 Wendell, 75,) the Chief-Justice says: “ The extent to which these cases have gone is this: that after the breach of a sealed contract, the parties may discharge any liability upon it by entering into a new agreement relating to the same subject matter, which new agreement is a valid contract, founded upon a sufficient consideration.” . . “ After breach of a sealed contract, a right of action may be waived or released by a new parol contract in relation to the same subject matter, or by any valid parol executed contract.”
2. Testimony to prove a waiver of the damages upon a new agreement on full consideration, being then admissible, the next question is, does the evidence make out such a case ?
[The testimony was then examined at length, and the court concluded that the instruments corroborated the evidence of Sand-ford, that the substitution of the new security offered by the plaintiff, was accepted by the company on the condition of the waiver of all claim for damages in consequence of the omission to perform the contract strictly.]
3. The next important question is; whether the defendants can claim that the bond and mortgage delivered to Abenethy, be retained as security for the extra stone supplied and work done by them?
For this extra work, the referee has allowed the sum of $3440.90 (2686.94+753.96) independently of interest. It seems that the sum of $2686.94 was for stone supplied and work done before the transaction of April, 1854. I consider that the other amount was for subsequent supplies.
The defendants, in the first "place, take the position that they cannot be compelled to surrender their security and cancel the mortgage, without payment for the extra stone furnished at the plaintiff's request; that -interpreting the agreement in the most limited sense, and assuming that the mortgage, in its terms and import, only covered stone provided for in the original contract, yet the security cannot be taken from them without payment of this new demand.
*215 Next, that the parol -agreement is made out, is valid, and gives them the right.
It is urged by the plaintiff, and to a great extent with 'truth, that the doctrine of tacking is unknown to our law. When that doctrine is carried to the length of enabling a mortgagee to unite a third incumbrance to his own, to the prejudice of an intermediate mortgagee, of whose claim he is ignorant, our law condemns the rule. Other examples of the principle carried to an extremity clearly denounced in our tribunals, may be found in Mr. Powell’s elaborate treatise. (On Mortgages, vol. 2, p. 423, etc.)
But the question is different when the case is exclusively between a mortgagor and mortgagee, and especially when the mortgagor comes to ask for an assignment of his security.
In this simple form, the right of the creditor to require payment of a further subsequent claim was recognized by the Civil Law. (Code 8, 27, 1. Vide Digest Lib. 13, 7-8.)
In James v. Rogers (15 Mass. Rep. 3, § 9) Justice Jackson, in an able opinion states, as the result of his examination of the Roman law, that a pledge might be retained, not only for the amount loaned upon it, but for all other moneys due to the pledgee on any account whatever. He cites Huber, Prseleotiones, Heinecius, and the Code. Justice Wilde admits this to be the rule as to debts contracted after possession of the pledge, and so does Chief-Justice Parker.
Judge Story admits that the civil law authorizes a mortgagee to unite, as against his own debtor, a second loan without security to the first, when the debtor seeks to redeem. (Story’s Eq. § 415, n. 2; Ibid. 1010.) See also Domat, vol. 1, p. 348, Art. 4, and the note.
A somewhat similar doctrine is found in the French Code. A novation of the debt as a general rule, extinguishes the hypothecation. But when it operates solely between the creditor and debt- or, to whom the mortgaged property belongs, they can by contract, transfer the things mortgaged for the ancient debt to the new one. This works no prejudice to the other creditors, because it does not prevent them from seizing the property, and selling it precisely as they might have done before the translation. The new obligation cannot exceed the old in amount, and it must be made at the time of the novation, not subsequently. (Touillier Droit Civil Francaise, tome 7, Arts. 308, 310, and note to 312.)
*216 In the earlier case, in England, it was explicitly laid down, that a mortgagee coming to redeem, must pay any moneys subsequently advanced, as well as the original mortgage money. In Demany v. Metcalf (Gilbert’s Rep. 104) this rule was stated in the analogous case of a pledge of jewels; and the Lord Chancellor stated his opinion to be that the rule would be applied to a mortgage of lands. In Baxter v. Manning (1 Vernon, 244) the point was decided in case of a bond given for moneys subsequently advanced, and without any special agreement. Halliday v. Kirtland, (2 Chan. Rep. 361,) and the anonymous case, (3 Salkeld, 84, fol. 7,) are to the same effect.
The case of Coleman v. Winch (1 P. Will. 775) is generally cited by the text writers, as reversing these decisions. But it is far from having that effect. An ancestor borrowed £100, and mortgaged lands to secure it; he afterwards borrowed £100 more upon bond; he died, and his heir conveyed the equity of redemption to trustees, to pay all his father’s bond and simple contract debts. The trustees brought a bill to redeem, and the defendant insisted upon the right of having both debts paid. This was denied. But Lord Macclesfield expressly admitted, that if the heir had come to redeem, he must have paid both demands. The difference was, that the rights of creditors intervened in consequence of the conveyance in trust by the heir. ,
The same principle is found in Lothian v. Hassel (3 Bro. Ch. Rep. 102). There shall be no tacking as against other specialty creditors, where the suit is for the administration of legal assets.
I have examined a large number of subsequent authorities down to Jones v. Smith, (2 Vesey Jr. 372, 1794,) in which case they are reviewed. Lord Alvanley states, as the result, that a bond may not be tacked to a previous mortgage, as against a mortgagor, nor against creditors, but may be as against the heir, to avoid circuity of action. That if there are two mortgages to the same person of different estates, and one is deficient in value, the party can only redeem by paying both: and why a bond should not be upon the same footing, he did not know. It was impossible to say why a bond should not be tacked as well as a mortgage.
The doctrine that two mortgages may be thus united upon a bill to redeem is also recognized in the case of Watts v. Symes (8 Eng. L. and Eq. Rep. 207).
*217 There were several cases before Lord Elden bearing upon the point.
In ex parte Langston, (17 Vesey, 228,) in bankruptcy, he held, that an equitable mortgage by deposit of deeds should stand for future advances, upon proof of a distinct agreement, though by parol, to that effect. In ex parte Waner, (17 Vesey, 202,) ex parte Whitbread, (ibid. 209,) and ex parte Kensington, (2 V. and Bea. 79,) the same rule was declared. In the latter case he expressed his strong disapprobation of the doctrine.
Then in ex parte Hooper, (19 Vesey, 477; 1 Merivale, 7,) he expressly ruled, that where there was a legal mortgage, it could not be rendered a security by subsequent advances, upon parol evidence of an agreement to that effect. It would be a violation of the statute of frauds, requiring a writing to change lands.
In Diver v. McLaughlin, (2 Wendell, 599,) the law is stated in the same manner, as also in Walker v. Snediker, (1 Hoffman’s Rep. 147,) and Chancellor Kent treats it as the settled English rule. (Comm. vol. 4, p. 176.)
In Rolfe v. Chester, (25 L. J. Rep. p. 246, 1854,) the right of a mortgagee to have a simple contract debt tacked as against the heir, was admitted, simple contract debts now binding real estate.
In James v. Rice, (27 L. and Eq. Rep. 342; 5th De Gex and McNaughton, 461,) deeds had been placed in the hands of the plaintiff, as security for a promissory note, and upon a further advance, the party promised to execute to the lender a mortgage for the whole amount. This was held binding. See, also, Uppington, v.-, (2 Drury and Warren, 184.)
Some cases in our own state bear upon the question. Grant v. The United States Bank, (1 Caines Ca. in Error, 112,) and James v. Morey (6 John Ch. Rep. 420, and 2 Cowen, 247).
Justice Willard treats James v. Morey as establishing this proposition, “that if a deed, absolute in its terms, be intended as a mortgage, and it be shown by parol to be also intended as a security for further advances, it will, as between the parties, be treated as a mortgage for the subsequent advances as well as the original debt.” (Eq. Jur., 436.)
That this proposition is warranted by the opinion of Chancellor Kent, when the cause was before him, cannot be disputed.
*218 But in the Court of Errors, Justice Woodworth, after examining various cases: says “ They show conclusively that the respondent cannot divert the securities taken, from the objects specified, when it formed no part of the original agreement, nor was ever assented to subsequently by Wattles, (the debtor,) and particularly when an objection is interposed by a Iona fide creditor, holding a judgment made valid by an amended specification.”
This question was considered as of so little moment in the decision of the cause, that neither of the other Judges or senators notice it in their opinions, or only to pass it over.
As to decisions in some other states, see Soupture v. Johnson, (3 Con. Rep., 211,) and Chamberlain v. Thompson, (10 Con., 251,) allowing the union of demands upon a bill to redeem. So in Maryland (Lee v. Stone, 5 Gill & Johnson, 22).
Another class of cases may usefully be adverted to. In Walker v. Snediker, (Hoffman Rep., 146,) I observed, that it appeared to be the better opinion, if not the settled law, that a mortgage which was to cover future advances ought to express the object on its face. In Craig v. Tappin, (2 Sand. Ch. Rep., 82,) Assistant Vice-Chancellor Sandford came to a different conclusion after examining the authorities, and held, that it was enough that the mortgage show upon its face the utmost amount which it was intended to secure; and up to that amount it would be valid for future advances, when such was part of the original agreement.
In The Bank of Utica v. Finch, (3 Barb. Ch. Rep., 294,) Chancellor Walworth declares the rule to be, that future advances may be covered by a mortgage to the extent of the sum mentioned in it. He says, “that parol evidence is.admissible, not to contradict the written instrument, but to show the purpose and extent for which it was executed. It was admissible to show that credit had been given to Einch upon the several discounts for him on the faith of the mortgage, and that it was treated by the complainants as a continuing security. Here is a mortgage, the record of which is a notice to all of an incumbrance to the extent of $30,000, and I suppose the holder of that mortgage may advance upon it up to that amount, and may be secure in his lien to the extent of his advance within that amount, such having been the agreement between himself and the mortgagor.
In such a state of the authorities we are at full liberty to deter *219 mine the question untrammelled by peremptory decisions. We cannot but conclude that parol evidence of an agreement, by which a mortgage given to secure a definite sum, shall operate to secure a further sum subsequently advanced, contradicts the rule, that such evidence shall not be allowed to add to the terms of a written instrument, and would, in effect, charge lands without an instrument in writing, signed by á party competent to charge them. (2 R. S., 134, § 6.)
The English authorities are of various classes. One is of bills to redeem, where the forfeiture being perfect at law, the court has .refused its interference but upon payment of other demands justly due. This was held in the early cases, but it is very doubtful if it is now the law.
Another class is of mere equitable mortgages, where the whole principle is the intendment resulting from the advance and deposit of deeds. This peculiar equity is, perhaps, unknown in our state, probably from the operation of the registry acts.
A third class is, where the question is between the heir or devisee and mortgagor; then, when there are legal assets, a bond creditor heretofore, and lately a simple contract creditor, may unite his demands. The reason is, that the land has become subject to a lien in his favor.
The union of one mortgage debt to another mortgage debt, as against the mortgagor, rests upon the same principle of a charge on the land.
As to the decisions in our own state respecting the extension of a mortgage, so as to cover future advances, I understand it to be the law, that they never can exceed the sum stated in the mortgage, and I understand it not to be the law of any case, that if’ such sum was unpaid, the mortgage could, by parol, be extended to an additional sum.
Thus understood, there is a lien created for a definite sum, the advance of which may be made in different amounts at different times. This is a very different case from that of the original debt unpaid, and a parol agreement to charge the mortgaged land with another sum.
We have been much struck with the consideration, that in truth, there is here a judgment in favor of the defendants, for a definite sum, which may be made to bind the real estate; indeed, the *220 equity of redemption of these very lands. And the 274th section of the Code enables the court to give judgment for or against one or more of several plaintiffs, and for or against one or more of several defendants. Why not allow the payment at once of this sum, which may be recovered ?
There are several answers to this view. The principle we have stated and adopted, is not carried out in its integrity by doing thus indirectly what could not be done directly. It does not appear that the judgment has been docketed, and until that is done, no lien is created. But chiefly, we should in this way deprive the plaintiff of the benefit of the redemption acts. His real estate will be held subject to the judgment, but in its regular order, and subject to those methods of enforcement and relief to him which the law has prescribed.
The result in our judgment is, that the defendants are not entitled to hold the mortgage as security for the amount of the subsequent extra supplies and labour.
There were some other points determined by the court, of no moment except to the parties, which it is not deemed necessary to repeat.