ZACHARY PECK, Appellant, v. WILLIAM MINOT, Jr.,
AND Others, Executors of WILLIAM SAWYER, Deceased,
Respondents.

*Bond and Mortgage—Consideration—Findings of Fact—Evidence.*

Where a bond and mortgage is given to secure the payment of a specific
debt between the parties, and business transactions continue between them,
with balances sometimes with the one and sometimes with the other, whether
any balances in favor of the mortgagor shall be applied to the payment of the
subsisting bond and mortgage is a question of fact depending on the inten-
tion of the parties; and unless such intention is expressed or implied from the
conduct of the parties, the mortgage lien will continue.

This action was commenced by the Plaintiff as the assignee of
William H. Brown, since deceased, against R. & G. L. Schuyler,
for a settlement of accounts. William Sawyer was also made a
Defendant, as being the assignee of a bond and mortgage which
were executed on the 11th day of June, 1851, by William H.
Brown to the Schuylers, to secure the sum of $16,000, payable
one year from date. The complaint alleged the payment of this
bond and mortgage, and prayed that the same might be delivered
up and cancelled. The suit against the Schuylers has been dis
continued, and the questions presented arise upon the mortgage
above mentioned. The referee reported in favor of the Defendant.

The judgment, upon his report, was affirmed by the General
Term of the Supreme Court of the City of New York, and the
Plaintiff now appeals to this Court. The facts are stated in the
opinion of the Court.

*N. Dane Ellingwood* for the Appellant.

*S. G. Lyon* for the Respondents.

Hunt, J.—The findings of fact by the referee are sustained by
the evidence, and are conclusive upon us. We cannot interfere
with the results reached by him, although we may be of the
opinion that the evidence would have justified a contrary conclu-
sion. The appeal to us is upon the law simply. Upon an affirm-

ance of judgment, the appeal upon the facts goes no further than to the General Term. There is testimony upon which the referee was justified in his conclusions of fact, and we look no further than to his report. Among others, the referee finds the following facts:

That prior to January 1, 1851, Wm. H. Brown and R. & G. L. Schuyler had dealings with each other for the five years preceding, in borrowing and lending money, checks, and notes, to an amount exceeding $531,000. Between the 7th of January, 1851, and the 4th of June of the same year, such dealings were continual, to a large amount on each side; and on the latter day there was a balance against Brown, on their accounts alone, of $16,000. To secure this balance Brown executed to the Schuylers his bond and mortgage, dated June 11, 1851, conditioned for the payment of $16,000 in one year from its date, with seven per cent. interest. The same kind of transactions continued between the parties until June 3, 1854, and the accounts also included a large amount of expenditures, deeds, and receipts, arising out of the transfer to the Schuylers of the steamers Independence, Seabird, Pacific, and of the accounts of the Daniel Webster. The three first of these vessels were transferred to the Schuylers by Brown, to save trouble to himself, and as being safer in their hands than his own; and the last one of them was purchased by Mr. Vanderbilt while unfinished in Brown's ship-yard. Whether, after the giving of the mortgage in question, there was at any time a balance of accounts, including the $16,000, in favor of Mr. Brown, is a simple question of fact. If such balance at any time existed, then the further question arises, was it the intention of the parties that the mortgage should be paid by such balance, or that it should continue as a subsisting security for the $16,000, independent of any balance in the current accounts? This, also, is a simple question of fact. If it was the intention and agreement of the parties that, as soon as a balance of $16,000 should accrue in favor of Brown, the same should be applied in discharge of the mortgage, then the mortgage was discharged the moment such balance existed. If, on

the other hand, it was the intention and agreement of the parties that the $16,000 secured by the mortgage should remain as a permanent debt, irrespective of the current balance of accounts, then it would so remain until specifically paid, whatever might be the state of accounts between the parties. Propositions more essentially questions of fact than those thus stated, cannot well be imagined. In response to the latter question the referee finds that there never was any application, nor any intention on either side to make an application, of any accrued balance in Brown's favor in payment of the mortgage; that, on the contrary, this mortgage was given with the intent that it should remain as a security for the original amount, so that moneys subsequently received should not be applied against it, and that it should remain unaffected by subsequent transactions until a final settlement of all accounts should take place.

It is not necessary that a referee should give the reasons upon which he bases his judgment of fact; but in the present case he has done so, and some of the reasons given by him are quite satisfactory. Then the mortgage in question covered three lots in Eighth street, and two lots on Ninth street, in the city of New York.

On the 21st of January, 1853, the Schuylers released to Brown the three lots on Eighth street. This release recited that it was made " to the intent that the lands hereby conveyed may be discharged from the said mortgage, and that the rest of the lands, in the said mortgage specified, may remain to the parties of the first part as heretofore." The release also recited that the Schuylers, at the request of Brown, " have agreed to give up and surrender the lands hereinafter described unto the party of the second-part [Brown], and to hold and retain the residue of the mortgaged lands as security for the money remaining due on said mortgage." This document affords evidence that, as late as January, 1853, Brown considered the mortgage to be in full force and effect, while the claim of his counsel is that it had been satisfied long before that period.

Again, on the 11th day of June, 1853, Brown executed and de-

livered to the Schuylers his four several promissory notes of $560 each; said notes were dated, respectively, December 11, 1851, June 11, 1852, December 11, 1852, June 11, 1853, and were expressed to be "for six months' interest due this day on my bond and mortgage to them for $16,000." These recitals furnish strong evidence that the mortgage was in force, to its full amount, on the 11th of June, 1853, on which day it was transferred to Sawyer, and, as the referee finds, with the knowledge of Brown. The referee concludes his findings on that branch of the case with this statement : " I find, as matter of fact, from the facts above detailed, that he (Brown) treated it on that day (June 11, 1853) as a still subsisting mortgage for the whole principal and interest, and that he and the Schuylers had never applied, and had never intended to apply, any payments that he had made in reduction or payment of the mortgage."

Upon this state of facts the question of how the accounts actually stood, at any time after the giving of the mortgage, is unimportant with reference to that security. The referee, however, on this point finds that, including the steamer accounts, there was no balance in favor of Brown, but a balance against him exceeding the amount of the mortgage.

The counsel for the Appellant urges that when a mortgage is given as security for a pre-existing debt, or for a balance of account, that the mortgage cannot be held as security for any subsequent balance, unless it was expressly so agreed. He also urges that a subsequent verbal understanding that an existing mortgage shall stand as security for another debt, does not create a lien under the mortgage (Townsend *v.* Empire Stone Dressing Co., 6 Duer, 208; Stoddard *v.* Hart, 23 N. Y. R. 556; James *v.* Morey, 2 Cow. R. 292).

The findings of the referee are so full and so explicit against the facts necessary to raise these propositions, that it is not necessary to discuss them. The questions do not arise in the present case. The last point raised by the Appellant's counsel embraces an objection to the evidence of the witness Alofsen. It is said that he should not have been allowed to testify to cer-

tain daily entries made by him in the course of the business of R. & G. L. Schuyler. The entries were made by the witness in his own handwriting, and, after looking at them, he testified that his memory was refreshed, and that he remembered the transaction. It was placed by the referee upon the distinct ground that, after having examined the entry, the witness remembered the transaction. There can be no doubt of the competency of such evidence.

The objections urged by the Appellant's counsel are mainly to the facts as found by the referee.

In relation to these, as already stated, we do not interfere; and upon legal questions I do not discover that any error has been committed by the referee or the General Term.

Judgment must be affirmed.

All concur.

Affirmed.

<div style="text-align:right">

JOEL TIFFANY,<br>
State Reporter.