I think the appeal was wholly without merit, and that the judgment appealed from should be affirmed, with damages for the delay.

All the judges concurred, except H. R. SELDEN, J., who was absent, and MULLIN, J., who dissented, on the ground that the two requests, taken together, were sound and should have been given to the jury.

Judgment affirmed, with costs.

---

## PECK *v.* MINOT.

December, 1867.

Affirming 4 *Robt.* 323.

Where a debtor gives his creditor a bond and mortgage to secure the balance of their account, and thereafter transactions continue between them, by which the balance passes to an equal amount against the mortgagee, the question whether the mortgage is paid thereby or continues as a subsisting security, depends on the intention of the parties, which is a question of fact.

If it was their intent and agreement that the money secured by the

III—30

mortgage should remain due irrespective of the current balance of accounts, the mortgagor is not entitled, as against an assignee, to have it canceled by proving a balance accrued against the mortgagee before the assignment.

The mortgagor's acceptance of a release of a part of the mortgaged premises, and giving his notes for interest due on the bond, are evidence of an intention to keep the mortgage subsisting.

Zachary Peck, as assignee of Wm. H. Brown, deceased, brought this action in the New York superior court, against William Minot, Jr., and others, executors of Wm. Sawyer, deceased, and R. and G. L. Schuyler, for an accounting. The main question was whether the plaintiff was entitled to have a bond and mortgage declared canceled, which Brown, his assignor, had executed in favor of the Schuylers, and which they had assigned to Sawyer. The details of the facts appear in the opinion. Judgment for the defendants on the referee's report was affirmed at general term (reported in 4 *Robt.* 323), and plaintiff appealed.

*N. Dane Ellingwood*, for plaintiff, appellant.

*S. G. Lyon*, for defendants, respondents.

By the Court.—HUNT, J.—The findings of fact by the referee are sustained by the evidence, and are conclusive upon us. We cannot interfere with the results reached by him, although we may be of the opinion that the evidence would have justified a contrary conclusion. The appeal to us is upon the law simply. Upon an affirmance of judgment, the appeal upon the facts goes no further than to the general term. There is testimony upon which the referee was justified in his conclusions of fact, and we look no further than to his report. Among others, the referee finds the following facts:

That, prior to January 1, 1851, Wm. H. Brown and R. & G. L. Schuyler had dealings with each other for the five years preceding, in borrowing and lending money, checks and notes, to an amount exceeding five hundred and thirty-one thousand dollars. Between January 7, 1851, and June 4 of the same year, such dealings were continued to a large amount on each side; and, on the latter day, there was a balance against Brown, on their account alone, of sixteen thousand dollars. To secure

this balance, Brown executed to the Schuylers his bond and mortgage, dated June 11, 1851, conditioned for the payment of sixteen thousand dollars in one year from its date, with seven per cent. interest. The same kind of transactions continued between the parties until June 3, 1854, and the accounts also included a large amount of expenditures, deeds, and receipts, arising out of the transfer to the Schuylers of the steamers Independence, Seabird, Pacific, and of the accounts of the Daniel Webster. The three first of these vessels were transferred to the Schuylers by Brown, to save trouble to himself, and as being safer in their hands than his own ; and the last one of them was purchased by W. Vanderbilt while unfinished in Brown's ship yard. Whether, after the giving of the mortgage in question, there was at any time a balance of accounts, including the sixteen thousand dollars in favor of Mr. Brown, is a simple question of fact. If such balance at any time existed, then the further question arises, was it the intention of the parties that the mortgage should be paid by such balance, or that it should continue as a subsisting security for the sixteen thousand dollars, independent of any balance in the current accounts ? This, also, is a simple question of fact. If it was the intention and agreement of the parties that, as soon as a balance of sixteen thousand dollars should accrue in favor of Brown, the same should be applied in discharge of the mortgage, then the mortgage was discharged the moment such balance existed. If, on the other hand, it was the intention and agreement of the parties that the sixteen thousand dollars secured by the mortgage should remain as a permanent debt, irrespective of the current balance of accounts, then it would so remain until specifically paid, whatever might be the state of accounts between the parties. Propositions more essentially questions of fact than those thus stated, cannot well be imagined. In response to the latter question the referee finds that there never was any application, nor any intention on either side to make an application, of any accrued balance in Brown's favor, in payment of the mortgage ; that, on the contrary, this mortgage was given with the intent that it should remain as a security for the original amount, so that moneys subsequently received should not be applied against it, and that it should remain un-

affected by subsequent transactions until a final settlement of all accounts should take place.

It is not necessary that a referee should give the reasons upon which he bases his judgment of fact; but in the present case he has done so, and some of the reasons given by him are quite satisfactory

Thus the mortgage in question covered three lots on Eighth and two on Ninth-street, in the city of New York. On January 21, 1853, the Schuylers released to Brown the three lots on Eighth-street. This release recited that it was made " to the intent that the lands hereby conveyed may be discharged from said mortgage, and that the rest of the lands, in the said mortgage specified, may remain to the parties of the first part as heretofore." The release also recited that the Schuylers, at the request of Brown, " have agreed to give up and surrender the lands hereinafter described, unto the party of the second part (Brown), and to hold and retain the residue of the mortgaged lands as security for the money remaining due on said mortgage." This document affords evidence that as late as January, 1853, Brown considered the mortgage to be in full force and effect, while the claim of his counsel is that it had been satisfied long before that period.

Again: on June 11, 1853, Brown executed and delivered to the Schuylers, his four several promissory notes of five hundred and sixty dollars each; said notes were dated respectively December 11, 1851, June 11, 1852, December 11, 1852, June 11, 1853, and were expressed to be " for six months' interest due this day on my bond and mortgage to them for $16,000." These recitals furnish strong evidence that the mortgage was in force, to its full amount, on June 11, 1853, on which day it was transferred to Sawyer, and, as the referee finds, with the knowledge of Brown. The referee concludes his findings on that branch of the case with this statement: " I find, as matter of fact, from the facts above detailed, that he (Brown) treated it on that day (June 11, 1853) as a still subsisting mortgage for the whole principal and interest, and that he and the Schuylers had never applied, and had never intended to apply, any payments that he had made in reduction or payment of the mortgage."

Peck *v*. Minot.

Upon this state of facts the question of how the accounts actually stood, at any time after the giving of the mortgage, is unimportant with reference to that security. The referee, however, on this point, finds that, including the steamer accounts, there was no balance in favor of Brown, but a balance against him exceeding the amount of the mortgage.

The counsel for the appellant agrees that when a mortgage is given as security for a pre-existing debt, or for a balance of account, that the mortgage cannot be held as security for any subsequent balance, unless it was expressly so agreed. He also urges that a subsequent verbal understanding that an existing mortgage shall stand as security for another debt, does not create a lien under the mortgage. Townsend *v*. Empire Stone Dressing Co., 6 *Duer*, 208; Stoddard *v*. Hart, 23 *N. Y.* 556; James *v*. Morey, 2 *Cow.* 246, 292.

The findings of the referee are so full and so explicit against the facts necessary to raise these propositions, that it is not necessary to discuss them. The questions do not arise in the present case.

The last point raised by the appellant's counsel embraces an objection to the evidence of the witness Alofsen. It is said that he should not have been allowed to testify to certain daily entries made by him in the course of the business of R. & G. L. Schuyler. The entries were made by the witness in his own handwriting, and, after looking at them, he testified that his memory was refreshed, and that he remembered the transaction. It was placed by the referee upon the distinct ground that, after having examined the entry, the witness remembered the transaction. There can be no doubt of the competency of such evidence.

The objections urged by the appellant's counsel are mainly to the facts as found by the referee.

In relation to these, as already stated, we do not interfere; and upon legal questions I do not discover that any error has been committed by the referee or the general term.

The judgment must be affirmed.

All the judges concurred.

Judgment affirmed, with costs.