Freeman, J.,
delivered the opinion of the Court.
This bill is filed by various creditors of Robert *566 Adams, to set aside several deeds of conveyance made to defendant Gibson of tracts of land in Henry county, besides a conveyance of personalty made to a son of said Adams.
The allegations of the bill are, that the deeds were made to hinder and delay the creditors of said Adams, and that they were fraudulent and void. After this allegation, the bill states that if the deeds are not in fact fraudulent, they were made to secure some small debts due by Adams to said Gibson.
The bill prays that the deeds be declared fradulent and void, and property conveyed be subjected to payment of complainant’s debts; and further, that “if said conveyances are not fraudulent and void, but executed in good faith to secure the said Gibson in various sums of money claimed to be due him from Adams, that said conveyances be held as mortgages and be foreclosed, Gibson’s debts be satisfied, and surplus proceeds of sale be appropriated to payment of debts in the bill mentioned.” .
The answer of Gibson “ denies that any of the conveyances were without consideration, or that they were made for the purpose of hindering, delaying or defrauding any of the creditors of said Adams; but were made in good faith for the purposes thereinafter stated.” He then states that Adams was indebted to him in various sums, and he was security for Adams in several cases, amounting in all to the sum of $443; that Adams conveyed the land in executed deed to him, it being a conveyance of one hundred acres, made June 7th, 1861, the consideration stated on the tace *567 of tbe deed being 12,000. He states that the deed made by Brown to him of the other tract of one hundred and two acres, for the consideration of $1,000, expressed on' face of the deed of same date, was made by the direction of Adams, the land being Adams’, but legal title being in Brown. As to the other tract of fifty acres, conveyed by Brockwell, Adams had bought it, paid part of the purchase money, and Gibson paid balance and took deed of this third tract to himself, expressing the consideration to be $500. The fourth deed made by Adams to Gibson of fifty acres of land, is not contested. It is for consideration of $5,000, which was paid and is not denied.
These deeds were all of same date except the last, which was made 22d May, 1860 — the others June 7th, 1861.
The answer claims that these three deeds were made to secure the amount due from Adams to Gibson, and to indemnify him as security on the other debts, for which he was bound, amounting in all to about $443, “with the further understanding that Gibson should afterward stand as security, or pay any debt that might be owing by said Adams, provided the amount should not exceed the value of the land. It was also understood, he says, that he should re-convey said lands to said Adams whenever he should be paid the amount due him; should be released as ¡security, and repaid any amount he might advance in payment of the debts of said Adams.
The conveyances, he says, though absolute on their face, were, in fact, mortgages intended to secure de *568 fendant in amount due him, the amount for which he might be held liable as security, and any amount that he might afterwards pay for said Adams.
He then goes on to state a considerable amount of indebtedness of Adams to him incurred after the making of these deeds, making, including the amount existing at that date, the sum of about $1,159,- subject to a credit of $175 for a mule, leaving as debts claimed to be fastened on these, lands, about $984.
The first question which we propose to consider is admitting the deeds were not fraudulent in fact, but were intended as mortgages, though absolute on their face, and the transaction was bona fide, can Gibson, as against creditors, hold the land subject to any debts in his favor except those in existence at the time of the contract, to-wit, the sum of about $443. In other words, can a mortgage, existing alone as such in parol, be held good as against creditors for future advances and liabilities contracted to be incurred by a secret parol agreement of the parties.
The question is alluded to incidentally in case of Peacock v. Tompkins, Meigs’ Reports, 328, as to whether, where the deed on its face stipulates for future advances, it would be fraudulent as to creditors. As to this question, Judge Reese says, without deeming it necessary to assent to or repudiate the proposition, “that such a, stipulation would be valid, it is sufficient to remark that such is not the stipulation in the deed upon this record.” He then goes on to decide the real question presented by the facts in that case. The facts ryere that 'William Turner, being in debt to va *569 rious parties, in sums amounting in all to $1,198.45, conveyed an amount of property, estimated to be worth about $1,600, to a trustee, to secure their payment. To cover the difference between the debts actually due and value of the property, and probably to secure future advances or further credit, Turner executed two notes at same date of the deed — one to Tompkins for $300, the other to McAuly for $200 — which were intended to be secured, and were covered by this deed of trust. In the bill filed to declare this deed fraudulent, it was charged that the deed was fraudulent, especially as to these two notes. It appeared that these two notes were not given for money due by Turner, but in language of the opinion, “were executed at the time of making the deed of assignment, not to secure any debt then due or advances then made, but upon a verbal agreement and understanding between the parties that credit should be given to Turner, and advances made to him, for the joint object of enabling him to support his family and manufacture the materials assigned for the benefit of the assignor and assignees.” The Court say, “was this fraudulent in fact or by operation of law, as being calculated to embarrass and postpone other creditors in the collection of their debts?”
The Court held this deed fraudulent by operation of law, and set it aside as void, “constituting no valid security for the debt.” The reasons given are, “that the deed announces to other creditors an existing debt of $500, which did not exist in fact, and for which there was no consideration, other than the secret agree *570 ment of the parties.” If this can be done, say the Court, and the deed remain a valid security for the debt really due, is it not obvious that it would furnish to fraudulent and embarrassed debtors, and their friendly assignees, a mode of protecting property against executions of other creditors, as simple and easy as it would be safe? A small amount of' actual indebtedness as a nucleus, might in this manner be enlarged to such magnitude as to cover considerable property, and so as to alarm and repel other creditors, depriving them of legal remedies, constraining them to seek discovery and relief, and investigate the question of extent of indebtedness in a Court of Chancery. It may be added, the Court distinctly hold, that no actual or intentional fraud in fact existed in the case.
This case certainly decides the very question before us, that a contract at the time for future advances can not be sustained, and goes further, and makes the fact, that such future advances so contracted for are placed in the amount secured by the deed, while the contract for such advances was verbal, and not shown on face of the deed, have the effect to render the deed of trust absolutely void, as to creditors, even as to the- debts actually secured. '
On the first point the. decision is clear, distinct, and unequivocal.
We are not aware that this case has ever been overruled by this Court.
If, however, a stipulation in the deed of trust, securing debts having no existence, but assumed to exist, and that deed registered, shall render the deed void, *571 witb much more force may it be held, that a stipulation secretly made, to secure debts to be created" in tbe future, having no existence at the time, would not. be valid against the claims of creditors. The principle of this case is, that the statement oí a false consideration in such case, tends necessarily to hinder, embarrass, and delay creditors, by giving notice of a state of indebtedness not in existence, yet equally operative to deter creditors from enforcing their claims against the property, as if real, and hindering and delaying them, by compelling a bill in Chancery to develop the facts of the case.
"We may here remark, that by the policy of our registration laws, as has been repeatedly held, all secret liens are discouraged; in fact, as we understand them, as against creditors are absolutely forbidden.
In case of McGavock and Wife v. Deery et als., 1 Col., 368, 369, the direct question was presented to the Court, of the validity of a deed, that on its face secures future advances, or liabilities to be incurred.
The Court hold most correctly, after citing a number of authorities, that such a deed is valid, and “that the only question in such cases is, the bona fides of the transaction.”
The Court refer in the above case to the cases of Peacock v. Tompkins, and Neuffer v. Pardue, 3 Sneed, 193, with approval, and say, “that in both cases it was held that an assignment will not be held good to secure future advances or subsequent debts, where there is no stipulation to that effect in the deed; that it can not be done by a parol agreement or understanding.”
*572 In 3 Sneed ease, the Court say the deed sets forth a false and fictitious consideration, calculated to deceive creditors. It purports to be for $2,500, when only about $300 were in fact due. “It does not provide for future advances in goods or money, and purport on its face to be a security for such prospective debts. If this could be permitted at all, that is, to provide for future debts, it could only be by spreading the contract upon the deed, so that all having an interest in the matter could be informed as to the extent of the incumbrance. One creditor is not allowed to provide security for himself as to future debts and dealings by parol, to the hindrance and delay of other honest creditors.”
The Court go on to say: “ It is well settled that a subsequent debt under a parol agreement at the time, or by distinct contract, can not be looked to or embraced by a mortgage or assignment which is silent in relation thereto, and this last case is the case before n^” Now the Court in this case decided, or understood they were deciding, the precise question, in principle, now before us, that is, whether a mortgage can be made to cover debts not included in it, to be created in the future. If such mortgage registered as a security for money, on its face showing this fact, can not cover future advances, surely it would be doing violence to this principle to hold, that a deed absolute on its face, not purporting to be a security for a debt, either present or future, may first be turned into a mortgage by parol, and then, as a second' step, the debt which it secures be proven by parol to have *573 been secured by tbe deed, and that debt, one created long after making the conveyance. This, it seems to us, would be to do away with our registration laws entirely, and to make secret parol, unregistered liens, more effective than written ones, for in case of written mortgage in due form, the rights of a creditor would override the rights of the mortgagee, though he had advanced his money on the faith of the mortgage, if he fails to have his security duly registered, and that in proper county.
We would seriously ask, if any Court ought to overrule all this weight of judicial opinion and well-considered reasoning, to maintain what may be deemed a simple logical consequence of the doctrine that a deed absolute on its face may be shown to be a mortgage by parol. We can not clearly see that the .deduction is fairly drawn, that because a deed absolute on its face, may, as between the maker of it and the party to whom it is made, or even as against a purchaser with notice of the deed from the maker, be shown to be a mortgage, and sustained as such, that it follows that it can also, under our law, be equally effective against a creditor. The difference between the rights of a creditor with or without notice and a purchaser with notice of a conveyance, is broad and well defined. The purchaser with notice of a preexisting deed by his vendor conveying the land, would but stand in the shoes of his vendor, and take subject to the deed. * A creditor with an execution, on filing a bill to enforce his debt, though he has notice of the fact that his debtor has sold the land, received *574 the purchase money, made and delivered a deed in fee simple for it, can by virtue of his judgment and execution override all this, levy on the land, sell it for his debt, and nothing can interfere with him in the assertion of his rights. He can only be defeated of his claims upon his debtor’s property by a bona fide, transfer of the property, or contract to do so, as in case of title bond, and that duly registered as the law directs.
If this presents truly the rights of a creditor, much more may he override a verbal agreement for a mortgage, that can not by its very nature be registered.
The case of Ruggles v. Williams, 1 Head, 141, is cited as showing that a deed absolute on its face, may be shown to be a mortgage, and maintained as a valid security, as against a subsequent mortgagee, and that when a parol defeasance is shown, it only has the effect to reduce the title to that which was intended by the parties — a security for debts, instead of a sale of the property. "We admit it was so held in that case, and feel no disposition to disturb its authority. As an original question, however, we would hold differently perhaps, but cheerfully yield to the authority of a well considered decision on such a question as this.
It will be seen, however, that in this case the contest was between two conveyances, both made to secure debts.
The Court say, the great object of the registration laws is to give notice of the position and change of titles to property, as well as incumbrances on it. This *575 is necessary for protection of purchasers, and the information of creditors. Certainly, the Court adds, a subsequent purchaser can not object, because he has notice that the whole estate has passed, instead of the imposition of an incumbrance upon it. The reasoning of the Judge who delivered the opinion we admit includes the case of a creditor. Yet the case in hand presents the question of the right of a creditor with a judgment, or filing a bill to enforce his debt, and the generality of the reasoning must be limited and restrained by the facts of the case; the question raised on these facts, or such as are assumed to exist, alone being decided by the Court and authoritative. In fact, on looking closely into the reasoning, the use of the word, creditor, by the learned Judge, was- probably intended to apply to a creditor taking a subsequent mortgage, as that was the only case before him, and has no reference to the case of one seeking to enforce his rights by process of law, and not by contract. It is seen on page 142 of case, that one of the parties to the original proceeding in this case was a judgment creditor; but that he had obtained relief, and, in language of the Court, no further question was made as to him — his case was not before the Court.
The Court, however, in this case, distinctly recognize the doctrine as we maintain in this opinion, as to rights of creditors or subsequent incumbrancers against debts and liabilities not in existence, which it was claimed the deed was designed to secure. The Court say, page 145, “that an account was ordered as to that matter, and how it may turn out upon in *576 vestigation, we can not now tell. We have not that aspect of the case before us; it may bring up very different questions and entirely change the result.” The Court in conclusion say: We decide nothing more now than that, all other things being right, a party is not deprived of the benefit of his security because the instrument registered is in the form of a deed. This may well stand consistent with other decisions of our State, as to subsequent purchasers or incumbrancers, the case before the Court, but can not fairly be applied to the case of a judgment creditor.
It will be seen, however, that even the reasoning of Judge Caruthers does not go as far as is now proposed ; for, he says (p. 144): “ So in this case, though the paper is not good to carry the absolute estate, yet it is valid as an incumbrance to the extent of the debts secured. It is enough for a subsequent incum-brancer, that the title registered against him is reduced in his favor, and he has the same advantage as if the actual transaction were in writing.” This' shows that he only refers to creditors by subsequent incumbrances, who would stand on the same ground as purchasers.
The case of Jones v. Jones, 1 Head, 105, is referred to; but it will be seen in that case, that the rights of creditors were not involved nor alluded to in the opinion.
It will be observed, that in the case (1 Head) the conveyance was only allowed as security for the actual amount due as against a subsequent mortgage, and no question was made as to future advances. On the contrary, it was clearly indicated by the Court, that *577 if, on inquiry, it should be shown that the debts it was designed to secure were not in fact in existence, it would present quite a different question, and entirely change the result.
A number of cases are cited from New York, supposed to sustain the position that subsequent advances may be good as a charge on property conveyed by absolute deed. Two specially are cited from Abbott’s Digest, vol. 4, p. 50.
One of these cases is Townsend v. Empire Stone Dressing Company, 6 Duer, 208. We have not the case itself before us, so as to see on what facts it was decided. From the digest of the case we learn only that it holds that “ a mortgage for a definite sum may stand for the advances subsequently made up to the specified amount; but it can not be held to secure that sirm fully, and be extended by a parol agreement to a further additional sum.” We can not see that this statement aids the position assumed, for it is the case of a mortgage, not an absolute deed, and only holds that such mortgage is good for the sum specified on its face, even though subsequently advanced.
We do not know, from the statement, how the question was raised, but nothing is said with reference to the rights of creditors, or whether, as against creditors, the claim would have been allowed. As between the parties themselves to the mortgage, there can be no objection to the principle; but we think it fails entirely to reach the question in this case, and has no application or bearing on it.
The other case is Craig v. Tappan, 2 Sand, 78; *578 which simply lays down the principle, that a “mortgage, to secure future advances, is valid, and need not express that it is so intended; but it must exhibit the extent.of the lien intended to be created.” It also holds, that “a subsequent mortgage for a debt will take precedence over it as to the advances thereafter made, but only from the time of the execution of such last mortgage, and not from the time it was agreed upon, though the first mortgagee knew of the intention.” We can not see that this case sustains the view contended for. It is a case of an actual mortgage for a specified sum, and has no bearing on the question of first turning an absolute deed into a mortgage, or making the mortgage by parol proof, and then. by parol showing an agreement for future advances; thus by parol raising the lien of a mortgage, and by parol showing the extent of the lien, and that against a creditor seeking to enforce an honest claim against his debtor.
We may remark that, if these cases did support the view contended for, they are but decisions of inferior Courts, and not of Courts of the last resort, and, while they are of respectable authority, we would not feel bound by any means to follow them, much less to be controlled by the meagre statement of them given in the Digest.
Mr. Willard, a law writer of that State, whose work is one of considerable merit, lays it down, that “it is the duty of the incumbrancer to see that his mortgage is correctly recorded; and a subsequent mortgagee or purchaser in good faith, is not to be charged *579 with notice of the contents of the mortgage any further than they may be contained in the mortgage as recorded or registered; as where a mortgage for $3,000 was by mistake registered as being only to secure the payment of $300, it was held to be notice to subsequent bona fide purchasers to the extent only of the latter sum: ” p. 254. See also 1 J. Ch. R., 288.
The case in 2 J. Ch. R., 308, 309, simply states the rule that a mortgage may be sustained for future advances, and is not for that reason fraudulent. The case of James v. Johnson, 6 J. Ch. R., 428, 429, holds “that a mortgage for a debt may be held’ as security for further loans if there be no intervening right, and though the first deed is absolute in terms, and the defeasance is by parol, it is valid and effective between the parties themselves.” It will be seen that none of the cases touch the real question in the one under discussion, except on examination of the case in 6 J. Ch. R., 430, Chancellor Kent, while holding as above stated, says: “It is only where the rights of third persons are prejudiced by want of notice that the extension of the security is prevented.” In this case, the rights of third parties, and whether they can be interfered with, is the very question, and, in such case, Chancellor Kent holds it can not be allowed. So far as the case reaches the question, it is an authority against the position for which it is cited.
We may remark that in all these eases, as well as the case in 1 Head, the question was between the mortgage, either under a regular mortgage or an ab *580 solute deed, with a parol defeasance, where the doctrine of notice has legitimate application, as mortgagees are purchasers under the Registration Act of 1831, 3 Hum., 619. But the case of a creditor with a judgment, or one filing a bill seeking to enforce his debt, stands on entirely different grounds. With him the question of notice has nothing to do, further than that an instrument properly registered will defeat his rights, if bona fide made, to the extent of the contract as shown on its face. In other words, he has no. rights that will override what is bona fide, and placed on the record as such. But he is not to be affected by what does not appear, and of which the registration contains no evidence.
It is insisted, however, that no good reason exists why future advances may not as well be provided for by a parol contract as by one in writing and recorded, if they are stipulated for at the time of making the absolute deed. This might be so, if in the first place our registration laws had not been passed, in order that all liens as against creditors should be known, and required to be found on the Register’s books. If not there, as to such creditors they have no existence. It is admitted in this connection, that if this were an open question, “in view of our registration laws and their policy, it would be the sounder doctrine to hold that one of the best methods of suppressing frauds would be to hold such deeds, absolute on their face, though mortgages by parol, fraudulent and void as to creditors.” Then, we ask, upon what principle can we insist on extending the operation of such deeds, so as *581 to cover not only the sum actually secured, but all •that may be contracted to be advanced, or all liabilities to be incurred in all future time; for in this oase there is no limitation as to time, only that Gibson was not bound to advance more than the land was worth. The language of the answer being, that the deed was to secure the existing debt, and liability as security then incurred, “with the further understanding that this defendant should afterward stand as his security, or pay any debt that might be owing by said Adams, provided the amount should not exceed the value of the land.” “If this may be done,” in the language of Judge Eeese, in Peacock v. Tompkins, “and the deed remain a valid security for the debt really due, is it not obvious that it would furnish to fraudulent and embarrassed debtors, and their friendly assignees, a mode of protecting property against the executions of other creditors, as simple and easy as it would be safe? A small amount of actual indebtedness, to serve as a nucleus, might in this manner be enlarged to cover a considerable amount of property, so as to alarm and repel other creditors.” And we ask, can a party be thus permitted to so cover up his property, that a creditor with a judgment and execution at law, can be defied, and be compelled to have another suit in Chancery before he can make good his claim or ascertain its situation, the debtor remaining in possession for five or six years, as in this case, and till he dies, enjoying its rents and profits, and it not be said that the effect of such conveyance is to hinder and delay the creditor in collection of his debt, and to benefit *582 tbe debtor? We think not. And shall not the parties be fairly held to intend that which is the natural and inevitable' result of their conduct, as in other cases? We confess we can see no reason why it should not be so held. In truth, we think the real question in this case is not whether we shall follow B the principle of allowing a deed, absolute on its face, H to be turned into a mortgage by parol, but is, whether I we shall overrule and set aside the three well-consid- | ered cases decided by our own Court, to-wit, the case of Peacock v. Tompkins, Meigs’ R., the case in 3 Sneed, 193, and McGavock and wife v. Deery, 1 Col., 368, 369, and that in favor of a principle of most doubtful propriety, to say the least of it, in all its aspects.
Under our registration - laws, a deed registered, and defectively probated — as where it is proven by witnesses, instead of acknowledged by bargainor, and Clerk fails to state that “the witnesses were personally acquainted with bargainor” — is void as to judgment creditors: 3 Col., 508, 509. And it is too well settled to need authority, that knowledge even of a deed of conveyance made on valuable consideration interposes no bar to creditor, the creditor not being chargeable with notice, as is a subsequent purchaser: 4 Hum., 484.
It seems to us, that the terms and requirements, as well as the sound policy of our registration laws, would be conclusive of this question. After providing what instruments shall be registered, the Code, sec. 2075, is, that “any of said instruments not so proved or acknowledged and registered, or noted for registration, shall be null and void as to existing or *583 subsequent creditors of, or bona fide purchasers from, the makers without notice.” Does the registration of a deed, absolute on its face, convey any notice, or means of knowledge to a creditor of a secret parol agreement for future advances, or we may add, of advances already made? Most assuredly not; and on principle, both ought to be held alike void as to such creditors. Chancellor Kent, in 1 J. C. R.., 300, well remarks, “the act providing that all persons might have recourse to the registry, intended that as the correct, and sufficient source of information; and it would be a doctrine productive of immense mischief to oblige a purchaser to look, at his peril, to the contents of every mortgage, and to be bound by them, when different from the contents as declared in the registry. The registry might thus prove only a snare to the purchaser, and no person could be safe in his purchase, without hunting out, and inspecting the original mortgage.” This was the case of mortgage for $3,000 — that had been registered as for $300 by mistake. He says, further, “the statute did not intend to put the party upon further inquiry. The registry was. intended to contain in itself all the knowledge of the mortgage requisite for the purchaser’s safety.”
If this be the sound principle — and we think it can not be gainsaid — then much more ought deeds, that absolutely mislead by reciting considerations amounting to $3,500, when in fact, at their making, there was only $443, be held void as to a creditor. In fact,, the case stands as if no deed had been made or registered, as to such creditors; for what is sought to be *584 set up against them is not in the deed, not registered, but exists either in verbal contract, secret, known only perhaps to the parties themselves, or if reduced to-writing, and not registered, stands, and should stand as any other unregistered paper, of no effect as against the rights of a creditor.
In a word, in order to hold that the secret verbal contract shall defeat or postpone the creditor, we must hold in principle that there is no difference whatever, as against a creditor, between an instrument registered and a contract existing only in verbal agreement; that one is as effective as the other. As we have shown, the agreement sought to be interposed to defeat or postpone the creditor in this case is a verbal one, existing in parol alone.
The Code, sec. 2030, provides that “all deeds for the absolute conveyance of lands, tenements or hereditaments, or any estate therein,” shall be registered, and all “mortgages and deeds of trust, of either real or personal property,” shall be registered.
Does not this fairly mean that the deed absolute shall be what it imports to be for all purposes of notice; and that the mortgage and deed of trust shall each alike be what they purport to be, and shall give notice truly of their terms? Or, may we say that it shall be registered, and appear to be absolute on its face, and yet shall' be notice of something different from what it recites, or appearing to be a mortgage on its face, may as well give notice of an absolute conveyance to a creditor? This would be to make notice by registration not only a snare to mislead, a *585 false light to deceive, but to reduce our registration laws, by construction, to a solemn unmeaning trick, only adapted to deception, or rather far better adapted to deceive and mislead than to give information of the truth. In fact, on this principle, registration amounts to nothing, as it may as well be false as true, the facts having to be sought by information to be derived from a different source.
We have gone into this question at much greater length than was desirable, because of the fact of difference in opinion entertained, and most ably and vigorously maintained by other members of the Court, who feel bound to, and do, dissent from the views herein presented.
In conclusion, it is proper to say, that in the opinion of the writer of this opinion, the deeds in question are not only fraudulent in law but in fact. He concludes thus, because of the fact of the possession remaining unchanged for over five years, the meagre sum, $443, actually secured; the fact that only a small sum, seven hundred and odd dollars, was advanced by Gibson, or liability contracted in five years; the fact that Adams, while in possession, with the assent of Gibson, is proven to have said the conveyance was made to keep off certain security debts; that he had in two other instances tried to get parties to accept a conveyance of his lands, after finding that such parties were not in debt themselves; and the further fact, that the title to three tracts of land is placed in the hands of his friend and neighbor in one day, with a false consideration, stated at $3,500, when in fact the *586 smallest tract. was enough to amply secure the $443 due £¡¡nd contingent liability already incurred. Taking all these and other facts shown in the record, I can not persuade myself that Gibson was not informed of the purpose for which the deed was made by his friend, aad participated in that purpose. The answer of Gibson, denying in general terms that the deeds were fraudulent, goes for but little with me, as I can very well see that he would not probably consider it fraudulent to shield the property of his friend from a security debt. At any l’ate, he clearly understood and knew the terms of the deeds, the effect of which was to hinder and delay creditors, and I think is responsible for the legitimate consequences of his acts.
However, a majority of the Court hold there was no fraud in fact, but that, under the case of Alley v. Connell et als., 3 Head, 578, it must stand as a security for the amount actually due, or for which Gibson was liable at the time of making the deeds — as being only fraudulent in law, and obtained under suspicious circumstances, and such will be the decree of the Court.
The result is, that the land will be decreed to be sold, except as to the tract mentioned as not contested; and Gibson’s debt due at time of making deed, and-liability existing then, and afterward paid, amounting to about $443, will first be satisfied, and then the balance of proceeds will be appropriated to the payment of debts of complainants.
The deeds being held, under this view, as mortgages for this sum, Mrs. Adams will be entitled to *587 dower in these lands, and the same will be sold subject to her dower.
As to deed to personalty to Adams, the son, it will be held void and set aside, and the property conveyed therein may be appropriated to payment of complainant's debts.
The costs of this Court will be paid by Gibson, and also of the Court below.