# WASHINGTON COUNTY.

JOHN G. CLARKE, Administrator of JONATHAN N. HAZARD,
*vs.* ATTMORE ROBINSON *et al.*

A., by a single instrument of mortgage to B. and C., conveyed certain personal property to secure certain notes payable to B., and certain other notes payable to C. The mortgage was foreclosed on a bill to redeem brought by A. Afterwards C. conveyed his notes to B., and thereafterwards B. opened the foreclosure by taking a judgment against A., which covered the mortgage debt due to B., but not that due to C.

*Held*, that A. was entitled to redeem such proportion of the mortgaged property as the mortgage debt due to B. at the time of foreclosure bore to the whole mortgage debt due to B. and C. at such time of foreclosure.

*Held*, further, that A. was entitled to redeem the above proportion of the mortgaged property on paying the mortgage debt to B. remaining unpaid, with interest and proper incidental charges.

*Held*, further, that A., to redeem, was not required to pay his other indebtedness to B. not secured by the mortgage.

BILL IN EQUITY to redeem a mortgage and for an account. On the complainant's motion for a decree.

The former proceedings in this case are reported in 15 R. I. 226, 231, where the facts involved are stated. Such of them as were involved in the present hearing are recapitulated in the head note above.

*February* 18, 1888. PER CURIAM. Three questions are raised on this motion. They are: *first*, whether the complainant shall be allowed to redeem the whole of the stock which was mortgaged; *second*, if not, how much shall he be allowed to redeem; and *third*, shall he, in order to redeem, be required to pay, besides the debt to be paid under the mortgage, other debts not thereby secured.

*First.* We think the first question must be answered negatively. The mortgage was given to William A. Robinson and the defendant, Attmore Robinson, to secure three negotiable promissory notes dated March 25, 1848, one for $636 payable to William and Attmore, one for $1,400 to William, and the third for $2,000 to Attmore. The $636 note is conceded to have belonged to Attmore. The $1,400 note was reduced before the decree entered, February 3, 1864. That decree was entered in a suit to

redeem brought by the complainant's intestate, Jonathan N. Hazard, the mortgagor. It decreed that Hazard be allowed to redeem on paying $2,841.42 to Attmore, and $1,047.36 to William, with interest, on or before April 4, 1864, or on default that the bill stand dismissed out of court with costs. The sums were not paid.[1] The defendant Attmore, in his recent action against the complainant as administrator on said Hazard's estate, took judgment for the full amount ascertained to be due to him by said decree, and we have decided that the effect was to open the foreclosure either wholly or *pro tanto*, the question whether wholly or *pro tanto* being left for decision.[2] It seems clear to us that, if William had retained his interest under the decree, it would not have been possible for Attmore, by taking judgment as aforesaid, to prejudice it. The debt to William and the debt to Attmore were distinct, and, in equity at least, they did not lose their distinctness when they became merged in the foreclosure. But after the foreclosure, to wit, August 9, 1864, William released or assigned his interest to Attmore, who then became the sole owner, and the question is whether, this being so, the foreclosure was not wholly opened by the judgment taken. We think not. The reason why such a judgment is held to open the foreclosure is because a foreclosure necessarily satisfies the mortgage debt to some extent, and, therefore, to take judgment for the debt in full amounts to a disavowal of foreclosure. Here there were two distinct debts which belonged to two distinct persons until after the foreclosure, and the judgment was taken for only one of them, and therefore it seems to us that, consistently with said reason, it should be held to have opened the mortgaged stock to redemption only *pro tanto, i. e.* as to so much of it as, apportioning it between the two debts, will correspond to the debt for which the judgment was taken. Such a measure of relief is enough to protect the mortgagor. Courts of equity do not favor the doctrine of merger, and we do not see why, as a matter of equity, Attmore, as assignee of William, should not have the right which his assignor would have had. The counsel for the complainant argues that the two debts consti-

---

[1] See *Hazard* v. *Robinson*, 15 R. I. 226, 227.

[2] See *Clarke* v. *Robinson*, 15 R. I. 231, 233.

tute a single whole or unit. This view differs from that on which we rested our last previous opinion, and we are not convinced that it is correct.

*Second.* The second question arises in consequence of the reduction of the indebtedness before foreclosure, the indebtedness to William having been reduced more than the indebtedness to Attmore. The counsel for the defendant contends that under the mortgage William and Attmore took the stock conveyed as tenants in common, each taking proportionately to his debt, and that under the foreclosure they continued to be entitled in the same proportions. He cites cases in support of this conclusion; and granting that William and Attmore originally took as tenants in common in the manner stated, we see no reason to doubt its correctness. The mortgaged stock, however, is personal property, and therefore does not fall under the law that conveyances of real estate shall create tenancies in common unless joint tenancies are created expressly or by clear intendment. Pub. Stat. R. I. cap. 172, § 1. The mortgage deed conveys the stock to William and Attmore without any words which show that they were intended to take as tenants in common, and we have not been able to find any precedents which satisfy us that they can be held to have taken at law otherwise than as joint tenants. But though at law they are joint tenants of the stock, we think they must be required in equity to hold it as trustees for each other, proportionately to their respective claims, without survivorship between them. And so are the precedents as we understand them. *Petty* v. *Styward*, 1 Eq. Cas. Abr. 290; *Lake* v. *Gibson*, 1 Eq. Cas. Abr. 290, 291; *Rigden* v. *Vallier*, 2 Ves. 252, 258; 2 Story Eq. Juris. § 1206; 1 Perry on Trusts, § 136. We know of no case in which the precise question before us has arisen. But it seems to us that in case of such a trust, if one of the debts were paid, the mortgagees would hold the entire mortgaged personal estate as security for the remaining debt; and upon the same equity, it seems to us that if one of the debts were paid in part, they would thereafter hold as trustees for each other *pro ratâ*, taking the debts as they thereafter existed. It seems to us that, regarding the mortgage as security simply, as in equity we are bound to regard it until foreclosed, this is the more reasonable view. We therefore decide that William and

Attmore became entitled under the decree of foreclosure in proportion to their respective claims, as they were at its date and as they are ascertained in it, and, consequently, that the proportion of the estate which the complainant is entitled to redeem may be represented by the fraction whose numerator is 2841.42, and whose denominator is 3888.78.

*Third.* The counsel for the defendant contends that the complainant should be required, before he is permitted to redeem, to pay not only the debt to be paid under the mortgage, but also the other debts which his intestate owed to the defendant at his decease, and he cites cases to show that the requirement is according to the practice which prevails in the English chancery courts, and which has been adopted in this country in some of the States. In other States, however, the practice has been disapproved and rejected. *Bridgen* v. *Carhartt*, 1 Hopk. Ch. N. Y. 234 ; *Townsend* v. *Empire Stone Dressing Co.* 6 Duer, 208, 220 ; *Greer & Hartsell* v. *Chester's Heirs*, 7 Humph. Tenn. 77 ; *Lamson et al.* v. *Sutherland & Morgan*, 13 Vt. 309 ; *Frye* v. *Bank of Illinois*, 11 Ill. 367 ; *Beardsley* v. *Tuttle*, 11 Wisc. 74, 79. And the American text books say that the practice or doctrine of tacking, as it is called, does not prevail generally in this country. 1 Hilliard on Mortgages, 301, 302 ; 2 Jones on Mortgages, §§ 1082, 1083 ; Bispham on Equity, §§ 158, 159 ; 4 Kent Comment. *178, *179. We do not think it has ever prevailed in this State. It does not have the sanction of any reported decision, and we are strongly of the impression that the general opinion at the bar is against it. Our statute provides that, at any time within sixty days after the breach of the condition of a chattel mortgage, the mortgagor shall be entitled to redeem by paying the mortgage debt, with reasonable and lawful charges for expenses arising from care, custody, or otherwise, and that upon payment or tender thereof he may recover the property, if not forthwith restored, in an action of replevin. Pub. Stat. R. I. cap. 176, §§ 11, 12. We do not think the rule in equity should differ from the rule at law declared in these provisions ; and therefore on this account, and also because we think the English practice, however proper it may be in England, is not entirely consonant with our registration laws and our laws favoring equality among creditors, we decide that the com-

plainants shall be allowed to redeem on paying the mortgage debt remaining unpaid, with interest, together with proper incidental charges.    Of course the property, when redeemed, will remain to be administered either by the assignee or the administrator, and the defendant Attmore can come in with other creditors for his share.

*Joseph C. Ely & Amasa M. Eaton*, for complainant.

*Francis C. Nye & Arnold Green*, for respondents.